[S. F. No. 10771.  In Bank.—October 30, 1923.]

ALBERT H. JACOBSEN et al., Petitioners, v. SUPERIOR COURT OF THE COUNTY OF SONOMA et al., Respondents.

[1] CONSTITUTIONAL LAW—ENTRY AND OCCUPATION OF PRIVATE LANDS BY WATER DISTRICT—ABSENCE OF CONDEMNATION PROCEEDING.— The acts of a municipal water district in entering upon private lands, in advance or absence of any condemnation proceeding, with a force of employees and with mechanical structures and appliances for the purpose of making a number of test borings and excavations upon said lands to ascertain the rock and soil formations, in occupying so much of said lands as shall be needed for ingress and egress, in trampling down and destroying the growing grain of the land owners, and in building fences around such test holes and excavations for the better protection thereof pending the operations, constitute an unlawful invasion of the property rights of such land owners under both section 13 of article I of the constitution, which declares that "no person shall be deprived of life, liberty or property without due process of law," and section 14 of article I of the constitution, which prohibits the taking or damaging of private property for public use without just compensation having first been made to the owner.

[2] ID.—SECTION 1242, CODE OF CIVIL PROCEDURE.—The entry and occupation of private lands by a municipal water district, in advance or absence of any condemnation proceeding, for the purpose of making test borings and excavations thereon, are not permitted under section 1242 of the Code of Civil Procedure, which provides that in all cases where land is required for public use, the state or its agents may survey and locate the same, and may enter upon the land and make examinations, surveys, and maps thereof.

[3] CONDEMNATION OF LAND—CHARACTER OF ENTRY OR EXAMINATION PERMITTED BY SECTION 1242, CODE OF CIVIL PROCEDURE.—Whatever entry upon or examination of private lands is permitted by the terms of section 1242 of the Code of Civil Procedure cannot amount to other than such innocuous entry and superficial examination as would suffice for the making of surveys or maps and as would not in the nature of things seriously impinge upon or impair the rights of the owner to the use and enjoyment of his property.

[4] PROHIBITION — ENTRY AND OCCUPATION OF PRIVATE LANDS BY MUNICIPAL WATER DISTRICT — INJUNCTION—APPEAL.—Whether or not the operation and effect of a temporary injunction restraining land owners from preventing a municipal water district from entering and occupying their lands for the purpose of making

test borings and excavations thereon would be stayed upon appeal from the order granting the injunction or would require the issuance of a *supersedeas* in order to have that effect is immaterial in considering whether prohibition to restrain the lower court from proceeding with the action and from enforcing the temporary injunction is a proper remedy, where such appeal would not be as to such land owners a plain, speedy, or adequate remedy, because the effect of said order by virtue of its very existence pending any appeal which the land owners might take therefrom is to cast a shadow over their right to the full and exclusive use, enjoyment, and disposition of their lands which no mere stay in the operation and enforcement of the order could remove.

[5] CONDEMNATION OF LAND—PROCEDURE—CONSTITUTIONAL LAW.—The only legal procedure provided by the constitution and statutes of this state for the taking of private property for a public use is that of a condemnation suit which the constitution expressly provides must first be brought before private property can be taken or damaged for a public use.

[6] ID.—TAKING OR DAMAGING OF PRIVATE PROPERTY FOR PUBLIC USE—ORDER IN SUIT OTHER THAN CONDEMNATION PROCEEDING AUTHORIZING.—An attempt by a superior court in a proceeding other than a condemnation suit to order the taking or damaging of private property for a public use amounts to more than mere error.

[7] PROHIBITION — CONSTITUTIONAL LAW—APPEAL—REMEDIES.—Where the entry and occupation of private lands by a municipal water district under an injunction order permitting such entry and occupation given in an action other than a condemnation proceeding amount to a taking and damaging of such lands within the meaning of section 14 of article I of the constitution, and the land owners have no plain, speedy, or adequate remedy in the ordinary course of law, prohibition to prevent further proceedings in such action and the enforcement of such order is a proper and appropriate remedy.

PROCEEDING in Prohibition to prevent the Superior Court of Sonoma County from proceeding with the trial of a certain action. R. L. Thompson, Judge. Writ granted.

The facts are stated in the opinion of the court.

J. R. Leppo for Petitioners.

Frank J. Burke and Robert M. Searls for Respondents.

RICHARDS, J., *pro tem.*—The petitioners herein apply for a writ of prohibition directed to the Superior Court of

the County of Sonoma and to Honorable R. L. Thompson, one of the judges thereof, prohibiting the said court and the judge thereof from proceeding to try a certain action pending in said court and from rendering any final judgment therein and from enforcing a temporary injunction heretofore issued therein and from making and entering any further order or issuing any further writ or other process having the effect of restraining these petitioners from preventing the plaintiff in said action from entering upon the petitioners' said lands or from doing the things proposed by said plaintiff to be done upon their said lands and premises without their consent. The respondents herein rest their objection to the issuance of said writ upon their demurrer to the petition upon the ground that it does not state facts sufficient to constitute grounds for the issuance of the writ. The facts which are set forth in the petition as forming the basis for the petitioners' prayer that the writ should issue and which are thus admitted to be true may be briefly summarized as follows:

The Petaluma Municipal Water District is a public corporation organized in the year 1922 under the provisions of the act of 1911 (Stats. 1911, p. 1290), entitled "An Act to Provide for the Incorporation and Organization and Management of Municipal Water Districts," with its later amendments, which public corporation comprises territorially the city of Petaluma and has for its purpose the supplying with water the inhabitants thereof. The petitioners herein are the owners in severalty of two considerable tracts of land adjacent to each other lying about six and one-half miles from the said city of Petaluma upon which they respectively reside with their families and which they devote to the cultivation of hay, grain, and other crops, each maintaining a dairy upon his own tract of land. Shortly after its organization in 1922 the said municipal water district began exploring the region around the said city of Petaluma for the purpose of locating sources of water supply for the uses of said city and its inhabitants, in the course of which the officials of said water district applied to the petitioners herein for permission to make certain surface surveys and examinations of the petitioners' lands for the purpose of determining their availability for reservoir sites. It was granted such permission and going upon said lands

made certain examinations, maps, surveys, and so forth within the terms of their said permission so to do; and when these were completed the officials of said water district requested of said petitioners permission to go upon their said lands with well-boring outfits, tools, machinery, and appliances for the purpose of boring holes and making excavations for the avowed object of ascertaining whether or not there was underneath the surface of petitioners' said lands rock strata or other formations suitable or necessary for the construction of dams and building of reservoirs for the impounding of water for the uses of said water district. The petitioners declined to grant such permission upon the ground that the doing of the things which the water district thus proposed to do would result in substantial and irreparable injury to the petitioners' lands and crops and would be an invasion of their private property rights in their respective holdings. Thereupon the municipal water district commenced an action in the superior court of the county of Sonoma against these petitioners for the purpose of obtaining an injunction against them, and each of them, enjoining them from preventing the officers or agents of said water district from entering upon or occupying the petitioners' said lands for the purpose of making the excavations, borings, and subsoil examinations set forth in detail in its complaint and in the exhibit attached thereto, which consists of a blue-print plan of the petitioners' lands showing the location of the test holes and test pits proposed to be sunk or excavated thereon. The complaint alleges that the boring of the said test holes will involve the installation of a boring rig at the indicated points upon the petitioners' lands operated by gasoline or steam-engine motors, and that the test holes sunk by the use thereof will be from three to eight inches in diameter and of the depth of 150 feet or more; and that the test pits proposed to be excavated would be of the dimensions of about four by six feet and of a depth not to exceed fifteen feet. The complaint further alleges that in order to accomplish said work it would be necessary to employ and use four men upon said premises for a period of about sixty days with occasional visits from the officials of plaintiff in the course of inspection of the said work. It further alleges that at some of the places which the plaintiff thus proposes to enter for the doing of

said work there are growing crops of hay and grain which
will to some extent be trampled down and damaged or de-
stroyed during the course thereof. The complaint further
proceeds to allege that if a suitable foundation for a dam
and reservoir is found to exist through the aforesaid opera-
tions upon the petitioners' said lands the use of the same
for such dam and reservoir purposes would be a public use,
and if said lands were found suitable for such purposes the
plaintiff would proceed to acquire the same by purchase or
through the exercise of eminent domain, but that as yet no
proceedings looking to the acquisition of the said lands by
either method has been initiated or determined upon. The
complaint finally alleged that upon the completion of the
examination of the premises by the means thus detailed, the
plaintiff would restore the lands of plaintiff to their original
condition by filling in said test holes and excavations and
by removing their appliances from said lands. Upon the
filing of the said complaint the plaintiff applied for a tem-
porary restraining order after notice and an order to show
cause was issued thereon upon the return day of which the
defendants in that action who are the petitioners herein were
present in court; and the matter being called for hearing
the defendants by way of demurrer to the complaint ob-
jected to the jurisdiction of the court over the subject matter
of the action; and upon the overruling of said demurrer
presented their answer, which while general in its terms was
by stipulation of the parties treated as a specific denial of
the averments of the complaint. The matter being sub-
mitted, an order and temporary injunction was made by
the court wherein it was recited that the substantial aver-
ments of the complaint were true and wherein the court
permitted the plaintiff to enter upon the lands of defendants
for the purpose of conducting thereon their operations set
forth in its said complaint. The court expressly found and
recited in the body of its said order that no resolution, ordi-
nance, or other order had ever been passed or adopted by
the plaintiff or by its board of directors authorizing con-
demnation proceedings or other steps for the acquisition of
the lands of the defendants or that the same were required
for public use; and that no proceedings for the condemna-
tion of the defendants' said lands had been commenced or
authorized, and that the reason why no such condemnation

proceedings had been authorized or instituted was that the plaintiff was unable to institute such proceeding or to submit to the voters in said water district the proposition to authorize by bond issue or tax levy the collection of the necessary ·funds to purchase so much of said property as might be required for such public use until by the making of such subsoil examination of the said premises it could be determined that the same were suitable for such use. The court in its order for the issuance of the temporary injunction provided that the plaintiff should deposit with the clerk of the court the sum of $1,000 in cash as security for any damages which might be caused to the property of the defendants in the course of the execution of the work provided for in said order. The court, while thus making its said order for a temporary injunction, suspended the operation thereof for a brief period in order to enable the defendants to make application for a writ of prohibition to this court, and within the period thus permitted the present application was filed. The foregoing constitutes the essential facts presented to this court upon the hearing of this application.

It is conceded by the respondents in their briefs presented herein that if the entry upon and examination of the lands of the petitioners herein, as applied for and permitted in the above-mentioned action, would amount to the taking or damaging of petitioners' property within the meaning of section 14 of article I of the state constitution, the said order of the court would be violative of that provision of the constitution. It is, however, insisted by the respondents herein that the acts of entry and examination and excavation as proposed by the municipal water district and permitted by the court in said action would not amount to such a taking or damaging of petitioners' said properties as to come within the inhibition of said clause of the constitution, but that they were such acts as were expressly permitted by the provisions of section 1242 of the Code of Civil Procedure. We are unable to give our assent to either of these propositions. The petitioners herein are the sole owners of each of their respective properties and as such hold their rights to be protected in the exclusive enjoyment of every portion thereof under the express guaranty of both the state and federal constitutions, which declare that ''no person shall be deprived of life, liberty or property without due

process of law.'' (Const., sec. 13, art. I; U. S. Const., art. V, Amendments.) These constitutional guaranties are among the most sacred inheritances of the American people, derived as they are from those earlier English constitutions going back to Magna Carta and being reaffirmed in those succeeding petitions, declarations, and bills of right which form the fundamental background of the British constitution. These rights which the petitioners herein thus had to the undisturbed possession and use of their respective holdings, they held, of course, subject to the superior right of eminent domain existing in the state or its representatives to take their property, or so much thereof as was necessary for public uses. This public right, however, has always and everywhere been limited and safeguarded by express provisions of the constitutions and statutes of the several states and it has been uniformly held that being *in invitum* and in derogation of the common right, its exercise is strictly defined and limited by the express terms of the constitution or statute creating it. (10 R. C. L. 196; 10 Cal. Jur., p. 290, and cases cited; *Damrell* v. *San Joaquin County Supervisors*, 40 Cal. 154, 158; *Lindsay, etc.,* v. *Mehrtens*, 97 Cal. 678 [32 Pac. 802].) The first constitution of the state of California contained the provision reading ''nor shall private property be taken for public use without just compensation.'' This clause in the original constitution was variously interpreted during the thirty years that it remained the organic law of the state, but was generally construed as providing for a proceeding in court in the nature of a condemnation suit wherein the necessity for the taking of the property for the alleged public use could first be litigated and determined and wherein also the damages resultant upon such taking could be ascertained and provided for. (*Weber* v. *County of Santa Clara*, 59 Cal. 266.) In the early case of *Fox* v. *Western Pac. R. R. Co.*, 31 Cal. 538, this court in construing the Railroad Act of April 27, 1863 (Stats. 1863, p. 610), permitting the trial court in a condemnation proceeding to make an order giving railroad corporations the right to enter upon private lands and to proceed with the survey and construction of its road thereon pending proceedings for the condemnation of the same, held this not to be violative of the foregoing provision of the constitution. But the court receded from this posi-

tion in the later cases of *Davis* v. *San Lorenzo R. R. Co.,*
47 Cal. 517, *San Mateo Water Works* v. *Sharpstein,* 50 Cal.
284, *Sanborn* v. *Belden,* 51 Cal. 266, and *Vilhac* v. *Stockton
& I. R. R. Co.,* 53 Cal. 208, in the first of which cases last
above cited the court held that the statute which permitted
the *quasi*-public corporation to deprive the owner of the
use and enjoyment of his lands for an indefinite period
while condemnation proceedings were pending amounted to
a taking of the lands of such private person without com-
pensation and was for that reason violative of said consti-
tutional provision. The court did not in that case determine
whether a statutory provision for a bond to be given for
the payment of damages incident upon such taking would
suffice to satisfy the constitutional requirement as to com-
pensation; but the court, in the later case of *San Mateo
Water Works* v. *Sharpstein,* 50 Cal. 284, held that an order
of the trial court permitting the plaintiff water corporation,
in a condemnation proceeding, to take possession of and
use the lands of a private owner during the pendency of
the proceeding upon executing a bond in a stated sum for
the payment of the compensation or damages thereafter to
be ascertained was void as in excess of the jurisdiction of
the court and as violative of the foregoing provision of the
state constitution, which required simultaneous compensa-
tion upon the taking of private property for a public use.
In the constitution of 1879 the foregoing constitutional pro-
vision was further amplified and limited by the adoption
of the provision in section 14 of article I thereof reading,
"Private property shall not be taken *or damaged* for public
use without compensation having *first* been made to or paid
into court for the owner thereof." In the case of *Steinhart*
v. *Superior Court,* 137 Cal. 575 [92 Am. St. Rep. 183, 59
L. R. A. 404, 70 Pac. 629], the question arose as to the
power of the trial court in condemnation proceedings to
make an order permitting the plaintiff, a railroad corpora-
tion, in such suit to enter upon certain lands of a private
owner, the defendant therein, during the pendency of the
proceedings and before the value of the land to be taken
had been ascertained. Such order was sought·to be justi-
fied under the provisions of section 1254 of the Code of Civil
Procedure as it then read, permitting such a procedure. In
holding that such order would be void as violative of the

constitutional provision last above quoted, the court again reviewed the earlier cases above referred to and in so doing made use of the following significant language:

"At the time the present constitution was adopted (in 1879), the law as declared by the supreme court was as follows: The possession and use in terms authorized by the statute, before compensation had been made and while the proceeding was pending, is a taking within the meaning of the constitution, but the requirement of the former constitution, which only provided that private property should not be taken for public use without just compensation, was satisfied by a provision which insured the payment on reasonable terms as to delay and difficulty in the enforcement of the right. Viewed in the light of these facts, the change made in the language by the new constitution becomes significant. The following italicized words were added, and no other change was made in the general provision: 'Private property shall not be taken *or damaged* for public use without just compensation *having been first made to or paid into court for the owner.*'

"The purpose of the amendment is perfectly obvious. If the preliminary possession during the pendency of the proceeding is a taking within the meaning of the constitution, it cannot be authorized until the damages resulting therefrom has been judicially determined and the amount has been paid or tendered to the owner. . . .

"To hold that possession of land may be given to a person seeking to acquire a right of way by condemnation, during the pendency of the proceeding and before the amount of compensation has been determined and paid to the owner or into court for him, would be to hold that this so-called temporary possession is not a taking of private property for a public use. But both on authority and reason it is so."

In view of the foregoing decisions of this court it must be held that if the acts of the Petaluma Municipal Water District proposed to be done upon and in relation to the lands of these petitioners as detailed in its complaint in said action for an injunction and as recited by the trial court and the judge thereof in the order for the issuance of a temporary injunction made therein amount *pro tanto* to a taking of the lands of these petitioners, or of so much thereof as is proposed to be occupied by the said water district in

the doing of such acts, then such taking and the order of the said court permitting the same must be held to be violative of both of the provisions of the constitution above referred to and to amount to a deprivation of these petitioners of their property without due process of law. [1] As to this branch of the case we entertain no doubt that the proposed acts of said public corporation sought to be done and sanctioned under the order of the respondents herein amount to an invasion of the petitioners' property rights under both of said provisions of the constitution. The said corporation proposes to enter upon the petitioners' private lands, in advance or absence of any condemnation proceeding, with a force of employees and with mechanical structures operated by steam or gasoline enginery and with other appliances and implements suited to the execution of its intended purpose, which is that of making a number of test borings from three to eight inches in diameter and of a depth of 150 feet or more at various points upon petitioners' said lands, and also of making at other places thereon excavations of an area of four by six feet and of a depth of fifteen feet, and of occupying so much of said lands as shall be needed for ingress and egress and for the accomplishment of the foregoing purposes, and of trampling down and destroying the growing grain of the petitioners over the area to be occupied during such operations, and of building fences around such test holes and excavations for the better protection thereof pending such operations. It is idle to attempt to argue that such entry, occupation, disturbance, and destruction of the properties of these petitioners would not constitute such an interference with their exclusive rights to the possession, occupation, use, and enjoyment of their respective holdings as would amount to a taking and a damaging thereof to the extent and during the period of such entry upon said lands and of the operations of the corporation thereon.

[2] The respondents herein attempt to justify their claim of right to such entry and occupation and to uphold the court's order permitting the same under the provisions of section 1242 of the Code of Civil Procedure, which reads as follows: "In all cases where land is required for public use, the state, or its agents in charge of such use, may survey and locate the same; but it must be located in the man-

ner which will be most compatible with the greatest public
good and the least private injury, and subject to the provi-
sions of section twelve hundred and forty-seven. The state,
or its agents in charge of such public use, may enter upon
the land and make examinations, surveys, and maps thereof,
and such entry shall constitute no cause of action in favor
of the owners of the land, except for injuries resulting from
negligence, wantonness, or malice.'' To give to the fore-
going section of the code the interpretation which the
respondents would have us place upon it would be to render
it clearly violative of the constitutional provisions above
referred to under the authorities above cited construing the
same. We are not required either by the terms of said
code provision nor by the exigencies of this case to go so
far. This section of the code is to be found under title I
of part III thereof which treats of the subject of ''eminent
domain'' and deals with proceedings for the condemnation
of private property for public use. The opening sentence
of the section apparently contemplates the existence and
pendency of such proceedings as a basis for whatever entry
upon or examination of the lands of private owners affected
thereby is permitted by the succeeding clauses of the section.
[3] But however this may be, it is clear that whatever
entry upon or examination of private lands is permitted
by the terms of this section cannot amount to other than
such innocuous entry and superficial examination as would
suffice for the making of surveys or maps and as would not
in the nature of things seriously impinge upon or impair
the rights of the owner to the use and enjoyment of his
property. Any other interpretation would, as we have seen,
render the section void as violative of the foregoing provi-
sions of both the state and the federal constitution.

The respondents finally contend that prohibition is not the
proper remedy, for the reason, first, that the trial court as a
court of equity had jurisdiction to make said order, and, sec-
ond, that its action in so doing was merely error against which
the petitioners herein had a plain, speedy and adequate rem-
edy by appeal. It will be conceded that the statute confers
the right of appeal from an order granting an injunction.
(Code Civ. Proc., sec. 963.) If the order herein from which
such appeal might have been taken is to be treated as a
merely prohibitive order it has been decided in numerous

cases that the operation of such order would not be stayed
by such appeal. (*Merced Co.* v. *Fremont,* 7 Cal. 130; *Swift*
v. *Shepard,* 64 Cal. 423 [1 Pac. 493]; *Dewey* v. *Superior
Court,* 81 Cal. 64 [22 Pac. 333]; *Stewart* v. *Superior Court,*
100 Cal. 543 [35 Pac. 156, 563]; *Rogers* v. *Superior Court,*
126 Cal. 183 [58 Pac. 452]; *Clute* v. *Superior Court,* 155
Cal. 15 [132 Am. St. Rep. 54, 99 Pac. 362]; *Hulbert* v.
*California etc. Co.,* 161 Cal. 239 [38 L. R. A. (N. S) 436,
118 Pac 928]; *United Railroads* v. *Superior Court,* 172 Cal.
80 [155 Pac. 463].) In a number of the cases above cited
a distinction is drawn between a prohibitive and a manda-
tory injunction, in that regard it being held that in case of
the former, application must be made for a writ of *super-
sedeas* to the appellate tribunal, but that in case the injunc-
tion is mandatory it will be stayed as to its operation by
the appeal. (*Clute* v. *Superior Court, supra.*) **[4]** But
whether or not the operation and effect of the temporary
injunction issued in the instant case would be stayed upon
appeal or would require the issuance of a *supersedeas* in
order to have that effect is to our minds immaterial, since
it seems clear to us that such appeal would not be as to
these petitioners a plain, speedy, or adequate remedy for the
invasion of their property rights which is accomplished by
the order assailed herein. The effect of said order by virtue
of its very existence pending any appeal which the peti-
tioners herein might take therefrom is to cast a shadow over
the petitioner's right to the full and exclusive use, enjoy-
ment, and disposition of their said properties which no mere
stay in the operation and enforcement of the order could
remove. That their property is less valuable, less usable,
less leasable, less salable with the shadow of this impending
injunction and threatened taking or damage hanging over
it would seem to be beyond dispute or question, and to that
extent their constitutional rights in and to their respective
properties would have been invaded notwithstanding said
appeal. Their remedy by that method is neither plain,
speedy, nor adequate, and to the extent that it is not this
case is to be regarded as though they had no such right
of appeal. This brings us to the first of the respondents'
above contentions, viz., that the trial court, a court of
equity, having had jurisdiction to make said order, it had
jurisdiction to err in making it and hence that prohibition

will not lie. The Petaluma Municipal Water District is a public corporation organized solely to serve a public use. The only purpose for which it can acquire, hold, and use property is for such public use. The only means by which it can acquire such property without the owner's consent is through the exercise of the right of eminent domain. [5] The only legal procedure provided by the constitution and statutes of this state for the taking of private property for a public use is that of a condemnation suit which the constitution expressly provides must *first* be brought before private property can be taken or damaged for a public use. (Const., art. I, sec. 14.) Said section of the constitution as amended in 1918 does provide that the state or certain specified political subdivisions thereof may take immediate possession and use of rights of way when required for a public use "upon first commencing eminent domain proceedings according to law in a court of competent jurisdiction and thereupon giving such security in the way of money deposits as the court in which such proceedings are pending may direct . . . to secure the owner of the property sought to be taken immediate payment of just compensation for such taking." This exception only serves to emphasize the otherwise general rule that no court in any other action or proceeding than an action in eminent domain has jurisdiction to order the taking or damage of private property for a public use. This court in the cases above referred to and in the very recent case of *Weiler* v. *Superior Court,* 188 Cal. 729 [207 Pac. 247], has held upon application for writs of *certiorari* that the superior court has no jurisdiction in a condemnation suit to order the invasion of private property for a public use until just compensation has first been made therefor in such proceedings. It would seem to follow irresistibly that a superior court has no jurisdiction to make such an order in any other action or proceeding than the one to which it is limited in its power to make any order or decree at all directing the taking or damage of private property for a public use. [6] Such an attempt on the part of the superior court amounts to more than mere error. As was well said by this court in the case of *McClatchy* v. *Superior Court,* 119 Cal. 413 [39 L. R. A. 691, 51 Pac. 696], in which another fundamental right of the citizen was attempted to be denied him and in which it was urged that

the action of the court in so doing was merely error and hence not reviewable upon *certiorari:* "It was error certainly but was more than that; it was a transgression of a fundamental right guaranteed to every citizen charged with an offense *or whose* property is sought to be taken, of being heard before he is condemned to suffer injury. Any departure from those recognized and established requirements of law, however close the apparent adherence to mere form in method of procedure which has the effect to deprive one of a constitutional right is as much an excess of jurisdiction as where there exists an inceptive lack of power. 'The substance and not the shadow determines the validity of the exercise of the power.'" (Citing *Postal Tel. etc. Co.* v. *Adams,* 155 U. S. 689, 698 [39 L. Ed. 311, 15 Sup. Ct. Rep. 268, 360, see, also, Rose's U. S. Notes].) [7] The facts in this case being admitted and the respondent herein having conceded that if its entry and operations upon the lands of the petitioner amounts to a taking and damaging thereof within the meaning of section 14 of article I of the constitution the order of the court assailed herein would be violative of that constitutional provision, it would seem that the writ of prohibition is a proper and appropriate remedy where, as in this case, the petitioners have no plain, speedy, or adequate remedy in the ordinary course of law.

Let the writ issue as prayed for.

Wilbur, C. J., Waste, J., Lawlor, J., Seawell, J., and Kerrigan, J., concurred.