[Civ. No. 36262. Second Dist., Div. Five. Mar. 30, 1971.]

COUNTY OF SAN LUIS OBISPO, Plaintiff and Respondent, v. RANCHITA CATTLE COMPANY, Defendant and Appellant.

384

---

---

## COUNSEL

Webber & Jackson, Ross, Webber & Hackett and Robert S. Webber for
Defendant and Appellant.

Robert N. Tait, District Attorney, Robert J. Schum and Jon Jenkins,
Deputy District Attorneys, and Thomas M. Dankert for Plaintiff and
Respondent.

## OPINION

**FRAMPTON, J.**\*—Over the period of approximately four years prior to the trial of the eminent domain action here involved (March 18, 1968), the San Luis Obispo County Flood Control and Water Conservation District (hereafter District) had planned the construction of the Lopez Dam Project.

The District and the County of San Luis Obispo (hereafter County) entered into a joint powers agreement whereby the County, for the mutual benefit of its citizens and those of the District, agreed to condemn the necessary real property for the project.

█ On December 1, 1965, at the behest of the County, the District obtained from defendant Ranchita Cattle Company a written "Right of Access" agreement as follows:

"Right of Access

"Pursuant to Act 7205, Section 5, Paragraphs 6, 7 and 8 of the Uncodified Acts of the Water Code of the State of California, permission is hereby granted to the San Luis Obispo County Flood Control and Water Conservation District and/or its authorized representatives to enter upon, and have access to, the land owned by the undersigned and hereinafter described, for the purpose of:

"Conducting surveys and geological investigations.

"Said land is described as follows: Portions of those certain Parcels of land shown on the San Luis Obispo County Assessor's Plats as Parcels 48-071-03, 48-071-06 and 48-071-07.

"Dated: December 1, 1965

"Ranchita Cattle Company

Witnessed by:
Lynette W. Sweet
(Standard Form No. 39)

By: /s/ Robert L. Katz
General Partner"

Commencing on July 29, 1966, some eight months later, the District brought personnel and equipment onto the property and commenced to drill the first of three wells. The first well was dug to a depth of 33 feet; the second well was dug in August 1966 to a depth of 80 feet, and the third well was dug in late August of 1966 to a depth of 80 feet. The wells were cased and were dug for the primary purpose of searching for water,

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

█

although the information obtained from the logs of the wells would be used for other purposes. Later, at a date not established in the evidence but at a time prior to the commencement of the trial of the eminent domain action (later filed), the District refilled two of the wells and capped them. The third well was still open as of the date of trial (March 18, 1968).

On April 13, 1967, the County filed its action in eminent domain seeking to acquire title to approximately 625 acres of land, title to which was vested in Ranchita. This acreage was part of a parcel of approximately 10,300 acres owned and operated by Ranchita as a ranch. The complaint alleged that the land was being acquired "for public dam, reservoir, flood control, recreational, and water conservation purposes."

The three wells in question were all dug on the 625-acre parcel which was later taken in the eminent domain action and were spaced within approximately 100 feet of each other. If a circle were to be drawn around the area in which the three wells were drilled, it would encompass a space of less than two-thirds of an acre.

On September 5, 1967, plaintiff County obtained an order for immediate possession of the parcel upon deposit into court of the sum of $50,000. This order became effective on September 11, 1967.

The cause went to trial on March 18, 1968. On March 27, 1968, the jury returned its verdict finding the fair market value of the parcel to be $124,891.40.

Ranchita moved the trial court to make a finding that it was entitled to receive interest on the award of damages for the taking from the date the District had entered upon the land taken and had commenced digging the three wells (July 29, 1966), and to include such interest in the judgment. The court denied the motion and held that Ranchita was only entitled to interest on the award from September 11, 1967, the effective date of the order for immediate possession. Interest was allowed in the judgment only from September 11, 1967, to the date of payment of the judgment. The appeal is from that portion of the judgment only which specifies the period of time during which Ranchita is entitled to interest on the award.

The trial court found, among other things ". . . that an Order for Possession was signed by the Court on September 5, 1967 which became effective on September 11, 1967. In addition, plaintiff previously entered a small area of the Ranchita property on or around July 29, 1966 near the southeast corner of Parcel A-107 [the parcel taken], for the purpose of drilling three wells. Such entry, however, was pursuant to a right of entry giving plaintiff the right to make surveys and to conduct subsurface

geological explorations. No claim has been filed with any governmental entity relative to the earlier entry. Defendants are not entitled to interest for such earlier entry."

A minute order of the court bearing upon its denial of interest on the award from the date of entry upon the property to conduct surveys and geological investigations reads in pertinent part as follows: "That defendant is denied interest before order for possession for reasons hereinafter stated.

"Rationale: Defendant gave plaintiff the right to enter and conduct geological investigations. Geological investigations include test borings. The Court so finds; it is not bound to accept defendant's testimony as conclusive.

"The Court implies an agreement to pay for any excessive or unreasonable damage beyond that authorized. A claim would have to be filed therefore [sic]. *Ghiozzi* v. *City of South San Francisco,* 72 C.A.2d 472 [164 P.2d 902] (inverse condemnation).

"No tort was committed because of permission. Hence, there was no taking under the Constitution. Were there a taking, it was only a partial taking and a pro-ration of interest would be required to prevent a gift of public funds and a payment for something not taken.

"The three holes each did not exceed one foot in diameter or depth of 90 feet.

"Defendants enjoyed full use of the parcel. No substantial interference was proved. *Aistrup.*

"C.C.P. Section 1255b contemplates a dispossessed owner. An offset for owner's use is allowed. Offsets are self-executing under the law. The Court finds the two to have been mutually extinguishing were interest allowable. The evidence on this point is somewhat meager and either party may wish to be further heard on that subject to protect the record."

### Contentions on Appeal

The basic issue as set forth in Ranchita's opening brief is the claim that the trial court erred in disallowing interest on the award for the time between the commencement of the digging of the wells by the District and the effective date of the order of immediate possession.

The sub-issues within the basic issue, as set forth in the opening brief, are as follows:

"1. Did the entry and digging of wells on private property constitute a 'taking' within the contemplation of the Constitutional provisions?

"2. Did a right of entry agreement executed by the owner grant the public agency the right to undertake such activity? If so, does such an agreement waive payment of interest?

"3. Was the trial court in error in invoking an automatic offset under § 1255b CCP when there was no evidence as to amount or attempt by plaintiff to claim an offset?

"4. Was the owner required to file a statutory claim as a condition precedent to a claim for interest on the condemnation award?"

Ranchita urges that the purpose for which entry was sought under the "Right of Access" agreement was misrepresented to it by the District. In this connection Mr. Robert L. Katz, general partner of Ranchita, who signed the agreement on behalf of Ranchita, testified: "Well, it was very clear at that point that the County was going to take a portion of our property, and they had yet to decide how much of that property would be taken and where the line would be drawn. And so I gave the permission for the survey teams to come in and to determine where that property line would be, and I gave the permission that geological studies of the soil could be made to determine where the road should go. And I asked the question explicitly about geological investigation, what that meant. And I was told at that time that meant we had to take soil samples to find out where the rock was to know where to put the road through. I had no idea at that time they were going to dig three wells. And especially they were going to dig three wells as evidence in our case. I certainly would never have granted the permission."

At the time entry was made and the three wells were dug, the eminent domain action had not been filed.

Sections 1242 and 1242.5 of the Code of Civil Procedure set forth a framework whereby a public entity, such as the plaintiff here, may obtain authority to enter upon private land for the purpose of making studies, surveys, examinations, tests, soundings, or appraisals, or to engage in similar activities reasonably related to the purpose for which the power to condemn may be exercised. The procedure for obtaining consent for such entry is to either secure the written consent of the owner to enter upon his property and to undertake such activities or to obtain an order of court for such purpose. Here, the District obtained the written consent of the owner.

The written "Right of Access" here under consideration is in general terms and is not precise as to what activities the District proposed to engage in on Ranchita's land by way of surveys and geological investigations. In the absence of language specifically defining what activities the District

intended to engage in after entry upon Ranchita's land to carry out its surveys and investigations, the "Right of Access" agreement gave the District no more than a right to make an innocuous entry and superficial examination sufficient for the making of surveys and maps, and such as would not in the nature of things seriously impinge upon or impair the rights of the owner to the use and enjoyment of his property. (Cf. *Jacobsen* v. *Superior Court,* 192 Cal. 319, 329 [219 P. 986, 29 A.L.R. 1399].)

█  Although it is stated in *Jacobsen, supra* (decided in 1923), in construing the provisions of section 1242, Code of Civil Procedure, that (p. 329): "The opening sentence of the section apparently contemplates the existence and pendency of such proceedings [eminent domain] as a basis for whatever entry upon or examination of the lands of private owners affected thereby is permitted by the succeeding clauses of the section," we are of the opinion that the adoption of section 1242.5 of the Code of Civil Procedure in 1959 grants permission to a public entity which has the power to condemn land for reservoir purposes, to conduct surveys and explorations upon land to determine its suitability upon compliance with the provisions of such statute, whether or not an action to condemn the land has first been filed. If the result of such survey should disclose that the land was unsuitable for reservoir purposes, obviously the public agency would not file an action to condemn it. On the other hand, if the statute is construed in such manner as to compel the public agency to first file an action in eminent domain to condemn the land as a condition precedent to the exercise of the rights conferred under sections 1242 and 1242.5 of the Code of Civil Procedure, and then abandon the action upon discovery, after survey, that the land was unsuitable, such construction would require the agency to perform a useless act.

█  If we assume here that the District, after having made its survey, had concluded that the land was unsuitable for the construction of a dam thereon, then no action in eminent domain for its acquisition would have been filed by the County. In these circumstances, Ranchita's remedy would be a suit against the County for damages sustained as a result of the activities of the District in surveying and exploring beyond the scope of the "Right of Access" agreement, and which seriously impinged upon or impaired the rights of Ranchita to the use and enjoyment of its property.

The fact, as here, that the eminent domain action was filed sometime after the entry, pursuant to the "Right of Access" agreement, does not change Ranchita's remedy from an independent cause of action for damages for the alleged trespass to that of a claim for interest in the eminent domain action pursuant to the provisions of section 1255b, subdivision (a)(2), Code of Civil Procedure.

If the activities of the District in the conduct of its surveys and geologi-

cal investigations were such as to seriously impinge upon or impair the right of Ranchita to the use and enjoyment of its land, it had knowledge of such activities, and knowledge that such activities were beyond the scope of the "Right of Access" agreement, as claimed, and it became its duty then to file a claim for damages against the District, resulting from this claimed trespass as a condition precedent to its right to bring an action based thereon. (Gov. Code, §§ 900-913.2.) No such claim was filed by Ranchita. Its failure to file a timely claim for damages claimed to have been sustained as a result of the District's survey and exploration activities beyond the scope of the "Right of Access" agreement, constitutes a bar to the recovery of such damages. (*Ruffino* v. *City of Los Angeles,* 226 Cal.App.2d 67, 68 [37 Cal.Rptr. 765]; *Tietz* v. *Los Angeles Unified Sch. Dist.,* 238 Cal. App.2d 905, 911-912 [48 Cal.Rptr. 245].)

In view of the conclusion herein reached, we deem it unnecessary to comment on other matters raised in appellant's brief.

That portion of the judgment appealed from, that is the denial of the recovery of interest on the award prior to September 11, 1967, the effective date of the order for immediate possession, is affirmed. Defendant Ranchita Cattle Company to recover its costs on appeal.

Kaus, P. J., and Reppy, J., concurred.

A petition for a rehearing was denied April 20, 1971, and the judgment was modified to read as printed above. A second petition for a rehearing was denied April 22, 1971. Appellant's petition for a hearing by the Supreme Court was denied May 26, 1971.