STATE of Minnesota By the WASTE MANAGEMENT BOARD, Respondent,

v.

Mae M. BRUESEHOFF, et al., Appellants.

No. CX-83-1221.

Court of Appeals of Minnesota.

Jan. 11, 1984.

Robert A. Nicklaus, Nicklaus, Monroe & Fahey, Chaska, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Allan W. Kowalchyk, Sp. Asst. Atty. Gen., Roseville, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and SEDGWICK, JJ.

## OPINION

FOLEY, Judge.

This is a case of first impression. It comes as an appeal from a summary judgment enjoining appellant landowners from interfering with electrical resistivity testing upon their land by the Waste Management Board. Both as a matter of statutory interpretation and as a matter of constitutional law, appellants contest the board's right to conduct the tests without first conducting condemnation proceedings. They also challenge the boards compliance with the necessity requirement of Minn. Stat. § 115A.06, subd. 5 (1982). The trial court found the access statute to be consti-tutional and to authorize electrical resistivity testing. We affirm.

## FACTS

The Waste Management Board is a state agency charged with selecting commercial hazardous waste disposal sites in the state. Minn.Stat. §§ 115A.18—115A.30 (1982). Appellants own land in Carver County which the board has designated as a hazardous waste disposal candidate site. The site is approximately four square miles.

In September 1982, the board sought access to appellants' land to conduct electrical resistivity tests to obtain soil permeability information. The board planned to use the information to reduce the site size to approximately one square mile before conducting an exhaustive environmental impact study. The board offered appellants anticipatory damages of $100 each and concedes that it is liable for actual damages.

Appellants denied repeated requests for access, so the board brought an action which resulted in the injunction from which appellants appeal.

## ISSUES

Upon appeal, appellants challenge the testing upon several grounds. They assert:

1. As a matter of statutory construction, Minn.Stat. § 115A.06, subd. 5, only authorizes Waste Management Board access to private property to conduct *surface* surveys and investigations.

2. Minn.Stat. § 115A.06, subd. 5's, authorization of board access to appellants' property to conduct electrical resistivity testing is an unconstitutional taking.

3. The board failed to satisfy the requirements of Minn.Stat. § 115A.06, subd. 5, in determining necessity.

## ANALYSIS

Minn.Stat. § 115A.06, sub. 5 (1982), provides:

Whenever the board or the chairperson acting on behalf of the board deems it

necessary to the accomplishment of its purposes, the board or any member, employee, or agent thereof, when authorized by it or the chairperson, may enter upon property, public or private, for the purpose of obtaining information or conducting surveys or investigations...

Appellants urge us to interpret this language to permit only surface surveys and inspections. More intrusive testing, they assert, should be done only by invoking Minn.Stat. § 115A.06 subd. 4, to get a temporary easement for testing through condemnation.

■ The broad language of the statute and its underlying purpose convince us otherwise. Statutory terms must be construed according to their common and approved usage. Minn.Stat. § 645.08, subd. 1 (1982), and agency powers must be construed in light of the purposes for which they were created.

■ In *Puryear v. Red River Authority*, 383 S.W.2d 818 (Tex.Civ.App.1964) a Texas court interpreted the statutory right of a water authority to "make surveys" to include the power to conduct core drilling. *Puryear* involved an injunction restraining a landowner from interfering with core drilling operations upon his land by the Red River Authority. The court affirmed the injunction, noting that the term "survey" should be interpreted in light of the authority's statutory duty to control, preserve, and develop the waters of the Red River. The court reasoned:

> To permit appellee the right to enter land and make surveys but deny it the right to conduct core drillings to determine the feasibility of locating a dam would be contrary to the clear intention of the Legislature. Surveying, without the right to test underground stratum would be of little value to water control districts. Core drilling to determine the underground stratum is an essential step in determining the location of proposed dams. 383 S.W.2d at 821.

*Puryear*'s purpose-oriented analysis applies here. The Waste Management Board has the difficult and politically sensitive task of selecting hazardous waste disposal sites for the state. The access statute authorizes the board to investigate potential sites so it can make informed site selections.

Electrical resistivity testing would cause minimal intrusion or damage, and would yield soil permeability information needed to assess the suitability of the Carver County site. Denying the board access to conduct such testing would frustrate legislatively mandated state waste management planning. "Obtaining information" and "conducting surveys and investigations" are expansive phrases, which when interpreted in light of the purpose of the access statute, clearly include electrical resistivity testing.

*Constitutionality*

■ Appellants also argue that Minn. Stat. § 115A.06, subd. 5 must be interpreted to authorize only surface surveys and inspections because more intrusive testing would be an unconstitutional taking under Minn. Const. art. 1, sec. 13, and U.S. Const. amend. XIV. The proposed electrical resistivity testing does not rise to the level of a constitutional taking because the testing serves an essential government function and involves minimal intrusion. Furthermore, the board is liable to the landowners for actual damages.

The Minnesota Supreme Court has not addressed the issue of taking in the context of a state agency's temporary intrusion onto private property to inspect and conduct tests. However, it has established a taking standard for cases where government activities interfere with landowners' use and enjoyment of their property. In *Alevizos v. Metropolitan Airports Commission of Minneapolis and St. Paul,* the court held:

> The test then that we prescribe will give relief to any property owner who can show a direct and substantial invasion of his property rights of such a magnitude he is deprived of the practical enjoyment of the property and that such invasion results in a definite and measurable diminution of the market value of the property. 298 Minn. 471, 487, 216 N.W.2d 651, 662 (1974)

Other states have used similar standards to uphold the constitutionality of statutes authorizing government bodies to enter private property to conduct preliminary surveys prior to eminent domain proceedings. They reasoned that surveys are temporary intrusions which do not substantially interfere with the owner's property rights or enjoyment of the land, and therefore, are not a taking in the constitutional sense. *See*, e.g., *Indiana & Michigan Electric Co. v. Stevenson*, 173 Ind.App. 329, 363 N.E.2d 1254 (1977); *Duke Power Co. v. Herndon*, 26 N.C.App. 724, 217 S.E.2d 82 (1975); *King v. Power Authority of State*, 76 Misc.2d 725, 351 N.Y.S.2d 493 (Spec.Term 1973); *Wood v. Mississippi Power Company*, 245 Miss. 103, 146 So.2d 546 (1962); *Lewis v. Texas Power & Light*, 276 S.W.2d 950 (Tex.Civ.App.1955). *See also*, Annot., 29 A.L.R.3d 1104 (1970). Even *Iowa State Highway Commission v. Hipp*, 259 Iowa 1082, 147 N.W.2d 195 (1966), which appellants cite in support of a narrow interpretation of the access statute affirms the constitutionality of statutes authorizing access for preliminary surveys.

Appellants concede that the state may constitutionally authorize board access for surface surveys without condemnation proceedings. However upon the authority of a 1923 California case, they contend that precondemnation access for any subsurface testing is an unconstitutional taking.

In *Jacobsen v. Superior Court of Sonoma County*, 192 Cal. 319, 219 P. 986 (1923), the California Supreme Court dealt with an eminent domain statute authorizing state agents to enter private land required for public use to "make examinations, surveys and maps thereof." The court held that the statute permitted only "such innocuous entry and superficial examination as would suffice for the making of surveys or maps, and as would not ... seriously impinge upon or impair the rights of the owner to the use and enjoyment of his property." 219 P. at 991.

It found that tests proposed by a municipal water authority constituted an unconstitutional taking. The *Jacobsen* decision described the tests at length to show how intrusive and destructive they were and how seriously they would impinge upon the landowners' property rights.

The said corporation proposes to enter upon the petitioners' private lands, in advance or absence of any condemnation proceeding, with a force of employees and with mechanical structures operated by steam or gasolene enginery [sic] and with other appliances and implements suited to the execution of its intended purpose, which is that of making a number of test borings from 3 to 8 inches in diameter and of a depth of 150 feet or more at various points upon petitioners' said lands, and also of making at other places thereon excavations of an area of 4 by 6 feet and of a depth of 15 feet, and of occupying so much of said lands as shall be needed for ingress and egress and for the accomplishment of the foregoing purposes, and of trampling down and destroying the growing grain of the petitioners over the area to be occupied during such operations, and of building fences around such test holes and excavations for the better protection thereof pending such operation. 219 P. at 990.

The level of intrusion and damage involved in this case is readily distinguishable from that in *Jacobsen*. Electrical resistivity testing involves walking over an area at quarter mile intervals and inserting ½" × 18" probes every 50 to 300 feet. A portable power unit sends an electrical current through the probes and the resistence of the soil to electricity is measured. The testing yields essential soil permeability information. And since it requires no vehicles or heavy equipment, it causes minimal intrusion or damage.

Electrical resistivity testing, like surveying, involves only a temporary intrusion which does not substantially interfere with property rights or cause a measurable decline in market value. Therefore, it does not rise to the level of a constitutional taking.

### Determination of Necessity

Appellants question the board's determination of necessity. They contend that the

testing is impermissible because: 1. staff, rather than the board determined necessity; 2. the board failed to pass a formal resolution of necessity before seeking access for the testing; and 3, the testing is not actually necessary.

The board did not impermissibly delegate the determination of necessity to its staff. The record shows that the board, acting upon staff recommendations, deemed electrical resistivity testing at the Carver County site to be necessary. Reliance upon staff recommendations does not constitute illegal rulemaking. *Bielke v. American Crystal Sugar*, 206 Minn. 308, 288 N.W. 584 (1939), upon which appellants rely, is distinguishable upon its facts.

The board's failure to pass a formal resolution specifically stating its determination of necessity is not fatal. The record as a whole shows that the board deemed the electrical resistivity testing necessary. However, the board would be advised to pass a formal resolution of necessity before requesting access to private property in all future cases.

Finally, upon review we are not called upon to determine if electrical resistivity testing is the best means available to the board for evaluating the suitability of the Carver County site. The question of necessity in this case, as in condemnation cases, is purely legislative and a determination thereof by the legislative tribunal is reviewed on appeal by the courts only to determine whether the action was arbitrary, capricious, fraudulent, or contrary to law. *County of Hennepin v. Mikulay*, 292 Minn. 200, 209, 194 N.W.2d 259, 264–265, (1972); *City of Austin v. Wright*, 262 Minn. 301, 306, 114 N.W.2d 584, 587 (1962).

Furthermore, there need be no showing of absolute or indispensable necessity, but only that the proposed action is reasonably necessary or convenient for the furtherance of the end in view. *County of Blue Earth v. Stauffenberg*, 264 N.W.2d 647, 650 (Minn.1978); *Cooperative Power Association v. Eaton*, 284 N.W.2d 395, 397 (Minn.1979).

Minn.Stat. § 115A.06, subd. 5, authorizes board access to private property to conduct electrical resistivity testing. Such testing yields essential soil permeability data and is clearly "reasonably necessary or convenient" to further selection of suitable hazardous waste disposal sites. We hold, the board's determination of necessity was not arbitrary, capricious, fraudulent or contrary to law.

## HOLDING

We affirm the injunction against interference with the proposed electrical resistivity testing, and the trial court's retention of jurisdiction over disputes arising from the testing.

Our holding is limited to approval of the proposed electrical resistivity testing and should not be read as blanket approval of all types of subsurface testing pursuant to Minn.Stat. § 115A.06, subd. 5. In the context of this case we need not canvas in detail the statutory and constitutional limits of the board's access authority under the statute.

**Affirmed.**