## NEW ENGLAND OIL & PIPE LINE CO. v. STATE BD. OF EQUALIZATION et al.

No. 16976—Opinion Filed Oct. 5, 1926.

**Mandamus—Writ not Allowed Against State Board of Equalization to Secure Refund of Gross Production Tax.**

Where plaintiff pleads it paid a gross production tax on oil and gas produced from an oil and gas lease in the Osage Indian Nation from March 3, 1921, to June 30, 1921, both dates inclusive, and that plaintiff was assessed and paid ad valorem taxes on the equipment of the lease for the fiscal year 1920-1921, and prays that the State Equalization Board order a refund of the gross production taxes so paid, by reason of section 3, chapter 20, Session Laws 1925, there is nothing pleaded which would warrant such rebate, and the prayer for mandamus to compel the board to grant same is denied.

Original Action in Supreme Court for Mandamus.

Action by the New England Oil and Pipe Line Company against the State Board of Equalization. Writ denied.

Rainey, Flynn, Green & Anderson, S. K. Bernstein, C. H. Rosenstein, and Leahy, McDonald & Files, for plaintiff.

George F. Short, Atty. Gen., and Leon Hirsh and J. Berry King, Asst. Attys. Gen., for defendants.

BRANSON, V. C. J. This is an original action in this court. The plaintiff is the New England Oil & Pipe Line Company, a corporation. The defendant is the state board of equalization, the individual officers composing the board being named in the petition. The object of the petition is a writ of mandamus against the said board, and the petition in substance and effect sets out that the plaintiff is a mining corporation engaged in the production of oil in the state of Oklahoma, and that it was so engaged in the years 1920 and 1921, and in the operation of its business it owned in Osage county certain personal property which was assessed ad valorem for the fiscal year ending June 30, 1921; that it paid its ad valorem tax for said year; that through mistake in not knowing that the state of Oklahoma was not entitled to collect a gross production tax from it on account of its said production from its mining lease prior to July 1, 1921, it paid to the State Auditor, as gross production taxes between the 3rd day of March, 1921, and the 30th day of June, 1921, both dates inclusive, gross production tax on its gross production from its lease, a certain sum of money; that said payment of the gross production tax was an overpayment of taxes, a duplication of taxes, and payments made through error during said time; it was also a payment of taxes which was not due to the state of Oklahoma because the production was derived from restricted lands belonging to the Osage Tribe of Indians and was therefore at that time not subject to the payment of a gross production

tax. It further pleads that on the 3rd day of March, 1921, an act of the National Congress authorized the state of Oklahoma to collect a gross production tax on oil and gas produced from oil and gas mining leases in Osage county, approved by the President on said date; that prior to the passage of said act the gross production of oil in said Osage Nation was not subject to the gross production tax law of the state, but that the equipment on oil leases therein was subject to be taxed on an ad valorem basis. Plaintiff further pleads that through mistake and error in overlooking the fact that it had paid the full amount due for the fiscal year ending June 30, 1921, it paid the gross production on the oil produced and sold from March 3, 1921, to the end of that fiscal year, "thereby paying a tax to the state of Oklahoma twice for the same period of time." That, therefore, petitioner is entitled to a refund of said amount of gross production tax which it paid to the state of Oklahoma for March 3, 1921, to June 30, 1921, both dates inclusive. Petitioner further, in effect, alleges that on the 21st day of July, 1925, it filed with the State Auditor of the state of Oklahoma its verified petition asking for a return of said taxes so erroneously paid as aforesaid, which was by the said State Auditor refused. That on the first day of October, 1925, petitioner presented its petition to the State Board of Equalization in regular session and demanded that said board order said amount of taxes refunded under and by reason of section 3 of chapter 20 of the Acts of the Legislature of the state of Oklahoma, 1925, but its petition to said State Board of Equalization was denied. Plaintiff further pleads that there is no other board or tribunal provided by law to whom applicant can appeal for a refund of said taxes so erroneously paid, and that it is made the specific and special duty of the Board of Equalization to pass upon this claim and allow the same, and that its failure to do so leaves the plaintiff without any adequate remedy at law, and it is thereby compelled to resort to the instant suit for mandamus to compel said board and the members thereof to hear, consider, and determine and allow the said claim.

An alternative writ directed to said board was by this court issued, to which the said board made due response, and, among other things, said:

"That the petition of the plaintiff fails to state facts sufficient to warrant the granting of the extraordinary remedy prayed for, in that it fails to show a clear legal right to any relief at the hands of the defendants."

The response further recites, in substance, that the gross production tax so paid between the 3rd day of March and the 1st of July, 1921, was neither paid erroneously nor paid upon oil and gas exempted from tax at the time. Further defensive allegations, largely going into questions of law, were incorporated in the response.

Herein it is stipulated on the alternative writ and the response thereto that the amount of ad valorem taxes and the amount of gross production taxes were paid by the plaintiff as alleged in its petition and that said taxes covered the period of time alleged in the petition of the plaintiff.

Second. That the gross production tax was paid on oil produced from land of the Osage Tribe of Indians and that the ad valorem taxes were paid for the fiscal year 1920-21 on property not only situated upon but used in connection with the leases producing the oil.

Third. That the State Board of Equalization did refuse as alleged to grant the application of the petitioner for the refund of taxes.

The question is, therefore, whether, under section 3, chap. 20, Session Laws 1925, the plaintiff was entitled to a refund as prayed. The said section provides:

"Section 3. In all cases of overpayment, duplicate payment, or payment made in error on account of the production being derived from restricted Indian lands, and therefore exempt from taxation, the State Auditor by and with the approval of the State Board of Equalization, after an audit by the State Examiner and Inspector, is authorized to refund any such overpaid, duplicate, or erroneously paid gross production taxes out of any gross production tax funds in his hands from the same county from which the original tax was derived and not apportioned to the State Treasurer to be distributed as provided by law."

An analysis of this statute is important. It falls into three heads:

First: Overpayment.

Second: Duplicate payment.

Third: Payment made in error on account of the production being derived from restricted Indian lands and by reason thereof exempt from taxation.

In such cases the section authorizes the State Auditor, with the approval of the State Board of Equalization, after an audit by the State Examiner and Inspector, to refund such overpayment, duplication, or erroneously paid gross production tax.

Passing for the moment the provisions of this act, under section 9814, C. O. S. 1921, we find that the gross production statute authorizes the receipt of such taxes in lieu of all other taxes by the state and the municipalities thereof on the leases and minerals or the equipment used in producing the same or in the operation of the wells or mines. In other words, the gross production tax is an "in lieu" tax, that is, it is substituted for and takes the place of what the general revenue statutes would otherwise fasten an ad valorem tax upon.

The ad valorem taxes on the personal property which plaintiff paid were for the fiscal year ending June 30, 1921. The general revenue act of the state fixes the date as of which the assessment was made for said fiscal year as of January 1, 1920. Upon such assessment, when equalized, and its finality is determined by the county equalization board, the excise board of the county took such property into consideration in fixing the tax rate and making the levy for the fiscal year beginning July 1, 1920, and ending June 30, 1921. This tax became due and payable to the state of Oklahoma on the first of December, 1920, and if not paid on or before the first day of January, 1921, it became delinquent. No doubt the personal property in question was subject to this assessment at the time the assessment was made and subject to the tax imposed thereon at the time the levy was made. It became due at the time other taxes became due, and delinquent, but for its payment, at the time other taxes would have become delinquent as aforesaid. Such property was subject to taxation on an ad valorem basis in Osage county for that at the time the said "in lieu" gross production tax law had no application to the Osage Nation, and did not have until March 3, 1921. On said last-named date, the national Congress passed an act which was approved by the President on said date, section 5 of which act provided:

"That the state of Oklahoma is authorized from and after the passage of this act to levy and collect a gross production tax from all oil and gas produced in Osage county, Okla., and all taxes so collected shall be paid and distributed, and in lieu of all other state and county taxes levied upon the production of oil and gas as provided by the laws of Oklahoma.

"The Secretary of the Interior is hereby authorized and directed to pay through the proper officers of the Osage Agency to the state of Oklahoma from the amount received by the Osage Tribe of Indians as royalties from the production of oil and gas the per centum levied as gross production tax to be distributed as provided by the laws of Oklahoma. * * *"

And it was by virtue of the last-quoted section that the inhibitions theretofore existing against the application of the gross production tax laws of the state on Osage Indian property were removed, and thereafter the plaintiff complied with the gross production tax law of the state and paid the tax which it now seeks to have refunded.

The position of the plaintiff is nothing less than this: That since it paid the ad valorem tax for the fiscal year 1920 1921, it should be relieved from the payment of any gross production tax during that part of said fiscal year from March 3rd to June 30th, inclusive. In other words, the position of the plaintiff is that, having paid the ad valorem tax, it was as a matter of law relieved from the gross production tax.

One trouble with the position of the plaintiff is that there is no statute, state or federal, which so says. The gross production tax law, to which reference is made above, is authorized **in lieu** of **ad valorem taxes.** There is nothing in the statute that makes the payment of ad valorem taxes in lieu of gross production tax. At the time the tax authorities assessed the property on an ad valorem basis it was subject to assessment. At the time the levy was made the authorities had a right to fix a rate at which the valuation of said property should be taxed; at the time the ad valorem tax was paid it was due as a matter of law. Congress, by the above-quoted section of the Act of March 3, 1921, authorized the state to apply its gross production tax laws to oil and gas produced by the plaintiff; there was no limitation as to any part or fractional part of any fiscal year, but the gross production tax became due "from and after the passage of this act," which was March 3, 1921. We know of no statute and no decided case which would relieve plaintiff from the payment of the gross production tax upon the date when the said act of Congress made the law of the state on such taxes applicable to the property of the plaintiff under which plaintiff could claim with any degree of reason to be relieved from the operation of the statute. In an action such as this, where mandamus is sought, it is a basic rule that the same will not be granted unless the plaintiff shows a clear legal right thereto.

Again, what we have said above presupposes that the said section 3 of chapter 20, of Session Laws of 1925, quoted, supra, would bring the payment pleaded within its provisions; but on an analysis of the three

separate subdivisions into which said section naturally divides itself, we 'find that, under the facts alleged by the plantiff, the tax, a refund of which is sought, falls under neither.

We cannot give the statute a strained construction. It provides relief in case of overpayment. The Legislature clearly had in view that in the collection of gross production tax a mistake; might be made which on examination by the State Examiner and Inspector, specifically mentioned in said section, the taxpayer liable to gross production tax would have paid too much, in which event the section provides him a remedy.

Secondly, it provides relief in case of duplicate payment. This could have been intended by the Legislature to have no other meaning than that by error or oversight the taxpayer liable to a gross production tax had discharged his liability, but by mistake had made two payments. Nothing of that sort appears in the instant case.

The third is payment made in error on account of the production being derived from restricted Indian lands and by reason thereof exempt from gross production tax. The allegations in this case do not bring it within the provisions of the statute, for as pointed out above the national Congress, possessing as it did, and does, plenary power over the tribal property of the Osages, had by its enactment specifically authorized the gross production laws of the state to be made applicable to minerals produced from the lands and properties of the Osage Indians, and no gross production tax was collected from the plaintiff until said act of Congress had made the law of the state effective in the Osage Nation, where it had not theretofore been effective. There being nothing in the statute which would authorize a return of the taxes paid, there is nothing to plead in plaintiff's petition which would authorize the State Auditor to refund the same even by and with the approval of the State Equalization Board.

Mandamus denied.

NICHOLSON, C. J., and MASON, PHELPS, LESTER, HUNT, CLARK, and RILEY, J. J., concur.