**In re SINCLAIR PRAIRIE OIL CO.**
**SINCLAIR PRAIRIE OIL CO. v.**
**STATE et al.**

No. 26007.    Dec. 17, 1935.

Edward H. Chandler, Summers Hardy, and Frank Orr, for plaintiff in error.

Tom Huser, Co. Atty., for defendants in error.

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., amici curiae.

GIBSON, J.    This appeal is from the judgment of the county court of Seminole county in a number of cases, consolidated, involving the assessment of personal property belonging to defendant.    The proceedings were commenced by the tax ferret before the county treasurer of that county under authority of section 12346, O. S. 1931, providing for the assessment of property omitted from the tax rolls.    From the action of the treasurer appeals were taken to the county court, where the cases were consolidated and submitted on an agreed statement of facts.    From the judgment of the trial court in favor of plaintiff, the defendant has appealed.    The state is referred to herein as plaintiff, and the Sinclair Prairie Oil Company as defendant.

The assignments of error contain a sufficient statement of the facts in the case, and are supported by the agreed statement. Such assignments will be set out herein and disposed of in the order of their presentation.

The first assignment is as follows:

"Said county court of Seminole county, Okla., erred in holding that oil produced from departmental leases and on hand in stock tanks on said leaseholds on the 1st day of January of the tax years 1924 to 1931, inclusive, upon which no gross production tax has been paid, is subject to ad valorem taxation for said years."

The second assignment presents a somewhat similar question, and reads as follows:

"That said court erred in holding that oil produced from commercial and departmental leaseholds, and on hand in stock tanks on said leaseholds on the first day of January of the tax years 1924 to 1933, inclusive—commercial leaseholds, and 1932 and 1933 departmental leaseholds—upon which a gross production tax was paid, is subject to ad valorem taxation for such tax years."

These two assignments are presented under the proposition that oil in stock tanks on the first day of January of any year is not subject to ad valorem taxation for the succeeding tax year.

The purpose and use of the stock tanks herein mentioned are revealed by the agreed statement of facts as follows:

"That the purpose and use of stock tanks situated on leaseholds is to accumulate and temporarily retain the oil run from producing wells to be gauged as to quantity and gravity in order that the value of said oil may be ascertained for the purpose of sale and payment of gross production taxes."

That portion of the gross production tax statute, section 12434, O. S. 1931, applicable to this case, is as follows:

"The payment of the taxes herein imposed shall be in full and in lieu of all taxes by the state, counties, cities, towns, townships, school districts and other municipalities upon any property rights attached to or inherent in the right to said minerals, upon leases for the mining of asphalt and ores bearing lead, zinc, jack, gold, silver or copper or for petroleum or other crude oil or other mineral oil, or for natural gas upon the mineral rights and privileges for the minerals aforesaid belonging or appertaining to land, upon the machinery, appliances and equipment used in and around any well producing petroleum or other crude or mineral oil or natural gas, or any mine producing asphalt, or any of the mineral ores aforesaid and actually used in the operation of such well or mine; and also upon the oil, gas, asphalt or ores bearing minerals hereinbefore mentioned during the tax year in which the same is produced, and upon any investment in any of the leases, rights, privileges, minerals or property hereinbefore in this paragraph mentioned or described; but any interest in the land other than that herein enumerated, and oil in storage, asphalt, and ores bearing the minerals hereinbefore named, mined, produced and on hand at the date as of which property is assessed for general and ad valorem taxation for any subsequent tax year shall be assessed and taxed as

other property within the taxing district in which such property is situated at the time."

The subsequent tax year mentioned in said section refers to the fiscal year, July 1st to June 30th, inclusive. In re Texas Company's Assessment, 168 Okla. 94, 31 P. (2d) 929.

The oil produced from departmental leases and on hand in stock tanks on the first day of January of each of the years 1924 to 1931, inclusive, was owned by the defendant and the restricted Indian in the proportions of seven-eighths and one-eighth, respectively, and was undivided. The interest of the Indian lessors had not been segregated or paid for. The state sought to assess for ad valorem taxation only the seven-eighths interest of the defendant, and the value of said interest was agreed upon.

Under the provisions of the Act of Congress ·approved May 10, 1928 (45 Stat. 496, sec. 3), as amended February 14, 1931, (46 Stat. 1108, 1109), the tax laws of Oklahoma were allowed to operate upon all minerals, including oil and gas, produced from lands belonging to restricted members of the Five Civilized Tribes after April 26, 1931. Prior to the last-named date the state was without power to collect gross production tax upon minerals produced from lands of restricted Indians in Oklahoma. Large Oil Co. v. Howard, 248 U. S. 549, 63 L. Ed. 416. Nor could the state levy and collect an ad valorem tax upon minerals in mass on hand at the mine before sale and before division between the lessor and lessee. Jaybird Mining Co. v. Weir, 271 U. S. 609, 70 L. Ed. 1112. Such taxation was condemned as an attempt to tax an instrumentality used by the United States in fulfilling its duties to the Indians.

In the case of Jaybird Mining Co. v. Weir, supra, the Supreme Court of the United States held that minerals owned by the lessor and lessee remaining undivided and in bins on the restricted premises on the first day of January were not subject to assessment ad valorem by the state for the subsequent tax year. The oil in the present case was held in tanks pending segregation of the interests of the lessor and lessee. The business relations between the lessee, on the one hand, and the federal government for and on behalf of the restricted Indians, on the other, were still in process of completion, and that relationship continued as to the particular oil until a complete division and segregation of the interests of the parties took place. No such division or segregation of the oil in the present case had tak-

en place on ad valorem tax assessment day of the years in question. To assess said property on those days for ad valorem tax purposes would be, under the decision in the Jaybird Mining Co. Case, an attempt to subject a federal agency to state taxation and therefore unauthorized and invalid.

Oil produced from defendant's commercial leases was at all times subject to the gross production tax, and that from its departmental leases has been so subjected since April 26, 1931, by reason of the act of Congress heretofore mentioned. The gross production tax has been paid regularly and in full. The tax so paid was in lieu of all other taxes due the state and its subdivisions for the tax year in which the oil was produced. Oil may be said to be produced for gross production taxation purposes within the meaning of the statute when it is brought to the surface and confined in such a manner as to permit its measurement as to quantity and its testing as to value.

The plaintiff contends that the oil in question was subject to assessment ad valorem on January 1st of each year under section 12581, O. S. 1931. The applicable portion of said section is as follows:

"All taxable property shall be listed and assessed each year at its fair cash value, estimated at the price it would bring at a fair voluntary sale, in the name of the owner thereof on the first day of January of each year, as soon as practicable on or after the fifteenth day of January, including all property owned on the first day of January of that year. * * *"

It is contended that the oil in question was in storage, produced and on hand at assessment date, and was personal property subject to assessment ad valorem; that any other interpretation of section 12434, supra, would in effect render the section invalid as a legislative attempt to exempt such oil from taxation contrary to the provisions of section 50, article 5, of the Constitution.

The gross production statute does not violate section 50, article 5, of the Constitution, prohibiting the exemption of property from taxation. In re Gross Production Tax, 53 Okla. 24, 154 P. 362. There is no constitutional provision prohibiting the Legislature from substituting one form of taxation for another such as was done by the enactment of the gross production tax law. The tax therein imposed is a property tax. In re Skelton Lead & Zinc Co.'s Gross Production Tax, 81 Okla. 134, 197 P. 495. The question, therefore, is not one of tax exemption, but one of ascertaining the identity of the property taxed under the gross production tax statute and the identity of that not so taxed. Such property as is taxed by the act is taxed for all purposes; that not included in the act remains subject to the operation of the general tax laws of the state.

The question then arises: Was the oil in the present case completely and wholly freed from the operation of section 12434, supra, on ad valorem tax assessment day? That is to say: On ad valorem assessment day for each of the years in question, did it occupy a different status for taxing purposes than that status fixed by said section 12434 for purposes of gross production taxation? We know of no constitutional provision prohibiting legislation authorizing a single property tax upon property produced, sold, and carried away through the regular channels of trade, and declaring that tax to be in lieu of all taxes then and thereafter to be levied and assessed by the state until such time as said property may acquire a definite and fixed situs outside of and apart from its movement in the regular channels of industry.

While the act does not provide that the taxes so levied shall be in lieu of all taxes thereafter to be levied, yet it does definitely fix the condition upon which oil may be assessed thereafter for ad valorem taxation, and that condition is: When the oil is found in storage. The tax then paid is for the tax year in which the oil is produced. The Legislature has in effect said that the oil is not freed from the operation of the statute until it is placed in storage, and assessment for ad valorem taxation is definitely postponed and restricted to that time. Such is not a legislative attempt to exempt property from taxation, but is a part of a system of taxation found by the Legislature to be most expedient to the end in view, the collection of a direct property tax.

The Legislature has not seen fit to enact laws authorizing ad valorem assessment of oil produced between annual assessment dates. Prior to the enactment of the first "in lieu" gross production tax law (chap. 107, S. L. 1915), oil, the value of which extended into millions of dollars, wholly escaped its just proportion of the property tax burden of the state. The gross production tax statute has provided a plan whereby certain property moving in regular commercial channels may be reached by a direct property tax.

Oil retained in receiving tanks as in the

present case is not in a state of storage, as contemplated by the provisions of section 12434, supra. When that section was enacted there were laws in force in the state dealing especially with the assessment of oil in storage. Section 12606, O. S. 1931, provides that it shall be the duty of the assessor of any township in which tanks and tank farms for storage of crude petroleum are located to assess as other property is assessed, to the proper owner at the fair cash value, as thereinbefore defined, any and all such tanks and the contents thereof. Such was the law governing the assessment ad valorem of all oil in Oklahoma when section 12434 was enacted. Section 12606, supra, is an assessment statute, and the duty of the assessor in each county "in which tanks or tank farms for storage of crude petroleum are located" is to assess "such tanks and the contents thereof."

Sections 12434 and 12606 deal with the same subject: The assessment of a property tax on crude petroleum. Section 12434 authorizes the tax while the oil is in process of production. Section 12606 authorizes the tax after the oil is placed in storage and no longer in process of production. There is no conflict between the statutes. Section 12434 subjects oil in storage on assessment day to the full operation of section 12606, and the assessment as authorized by said section 12606 must be accomplished as provided in section 12581, supra, governing the general assessment of all property subject to taxation.

The stock, or receiving, tanks in the instant cases were used to take care of the oil as it was taken from the wells. Their use, as distinguished from that of storage tanks, was recognized by this court in Going v. Shaffer, 89 Okla. 46, 213 P. 736, wherein it was said: "There were small receiving tanks on the lease to take care of the oil as it came from the ground, * * *" and:

"As we have heretofore stated, there were small receiving tanks in and around the producing wells which were actually used in the operation of such wells, but after it was received in these small tanks, it was conveyed to the steel tanks, which are the subject of this controversy, to be cared for until it could be marketed."

The Legislature may designate any day in the year as assessment day for any class of property, because uniformity of taxation does not include uniformity as to time of assessment. This court, in Anderson v. Ritterbusch, 22 Okla. 761, 98 P. 1002, speaking of the laws governing assessment of property omitted from the tax rolls, said:

"In laws for the assessment and collection of taxes due on omitted property, it is uniformity of burden and not identity of method of enforcement, which is required by constitutional principles."

By the same process of reasoning it may well be said that the constitutional provisions do not require uniformity in the method of assessment of all classes of property, and different times for assessment of separate classes of property may be fixed by the Legislature.

The plaintiff calls our attention to the decision of this court in Weir v. Jaybird Mining Co., 104 Okla. 271, 232 P. 425, wherein the court held as follows:

"Where lead and zinc ores extracted from the lands of restricted Quapaw Indians are stored in the bins of the lessee and assessed for taxation on the day fixed by the laws of the state, such ores, being personalty and private property of the lessee, are not exempt from ad valorem taxation."

This case was appealed to the Supreme Court of the United States (Jaybird Mining Co. v. Weir, supra), where the decision was reversed on the ground that a federal instrumentality was involved. Plaintiff argues that this court's decision in that case should apply to oil in stock tanks as well as to lead and zinc ore stored in bins of the lessee, where the question of a federal agency is not involved.

It will be noted that section 12434 fixes the time when the minerals may be assessed as follows:

"Oil in storage, asphalt and ores bearing the minerals hereinbefore named, mined, produced and on hand at the date as of which property is assessed for general and ad valorem taxation for any subsequent tax year, shall be assessed and taxed as other property within the taxing district in which such property is situated at the time."

Under this provision, the time oil may be assessed ad valorem is when it is in storage on January 1st, and the time lead and zinc ores may be assessed is when they are mined, produced, and on hand on January 1st, the assessment day. In the Jaybird Mining Co. Case, the ore was clearly mined, produced, and on hand on assessment day. The words "mined, produced and on hand" cannot in any way be used in connection with the term "oil in storage." Oil in storage is a term all-inclusive of "mined, produced and on hand." Such latter term, if applied and used in connection with the term "oil in storage," would be wholly superfluous and meaningless. The Legislature has merely fixed the time and conditions

under which the oil and other minerals may be assessed for ad valorem taxation, all of which was within its constitutional authority.

We therefore conclude that the oil in question was not subject to assessment for ad valorem taxation on January 1st of the years mentioned, for the reason that the time for such assessment as fixed by sections 12434, 12606, and 12581, O. S. 1931, had not arrived on said day. The trial court therefore erred in holding said property subject to ad valorem taxation for the years involved.

The third assignment of error follows:

"That said court erred in holding that large casing which was used in drilling wells on commercial leaseholds on the first day of January, 1925, which casing was removed from said wells prior to or at the time of completion of said wells then being drilled, which wells were afterwards completed and produced oil and/or gas subsequent to the first day of January and prior to the first day of July of said year, and a gross production tax was paid on the oil and/or gas produced from said wells, is subject to ad valorem taxation for the tax year 1925, fiscal year 1925-1926."

Section 12434, O. S. 1931, supra, provides that the gross production tax therein imposed "shall be in full and in lieu of all taxes, * * * upon the machinery, appliances and equipment used in and around any well producing petroleum or other crude or mineral oil or natural gas." Equipment used in a drilling well could not fall within the provisions of the statute as constituting machinery, appliances, and equipment used in and around any well producing petroleum. Such equipment, for the purposes of taxation, does not differ from a rotary drilling rig used only for drilling purposes, which was held subject to assessment ad valorem in Winkler & McQueen v. State, 167 Okla. 458, 30 P. (2d) 672.

Such casing was subject to assessment for ad valorem purposes although oil was discovered and produced and gross production tax paid thereon subsequent to ad valorem assessment day, and the judgment of the trial court so holding is affirmed.

The fourth assignment of error follows:

"Said court erred in holding that equipment in and around wells on commercial leaseholds that were producing oil and/or gas on the first day of January of the tax years 1929 to 1931, inclusive, which equipment was necessary to be used and was actually in use on assessment dates of said tax years in the production of oil and/or gas from said wells and where gross production tax was paid on the oil and/or gas produced from said wells prior to, on, and subsequent to January 1st of said years, and where said wells were abandoned subsequent to January 1st, and prior to July 1st of said years, is subject to ad valorem taxation for said tax years."

Plaintiff says this property was on hand January 1st, the ad valorem tax assessment date for the fiscal or tax year beginning on the succeeding July 1st, and that in order for such property to be exempt from ad valorem taxation for the succeeding tax year it must be actually in use in and around a producing well during such tax year. The question here presented is not one of tax exemption. It involves the assessable status of property as fixed by the Legislature. The property here involved has not been exempted from taxation. When it was drawn into use for the production of oil it immediately became subject to its full burden of property taxation and was immediately, by operation of section 12434, removed from that class of property referred to in section 12581, O. S. 1931, which provides for the assessment of all taxable property for ad valorem taxation. This section provides that all taxable property shall be listed and assessed. That means that property to be legally assessed ad valorem must be within that class of property subject to such taxation on the assessment day. Assessing officials may not look beyond the time fixed for assessment in an effort to ascertain the taxability of property, but the question of its taxability must be determined as of the time fixed by law for such purpose.

This is in accord with the former holdings of this court. New England Oil & Pipe Line Co. v. State Board of Equalization, 121 Okla. 277, 249 P. 914; Board of Co. Com'rs v. Central Baptist Church, 136 Okla. 99, 276 P. 726. In the New England Oil & Pipe Line Co. case the taxpayer operated oil and gas leases in the Osage Nation. Oil and gas produced in that nation were not subject to the state gross production tax until the passage of the Act of Congress approved March 3, 1921, 41 Stat. 249, sec. 5, whereby the state was permitted to collect such tax. The taxpayer paid the gross production tax from March 3rd to June 30th, inclusive, for the year 1921. Suit was commenced wherein mandamus was sought commanding the board to order a refund of the tax so paid for the reason that ad valorem taxes had been paid on equipment for the tax year 1920-1921. The court in the body of the opinion said:

"The ad valorem taxes on the personal property which plaintiff paid were for the fiscal year ending June 30, 1921. The general revenue acts of the state fix the date as of which the assessment was made for said fiscal year as of January 1, 1920."

And again:

"Such property was subject to taxation on an ad valorem basis in Osage county for that, at the time the said 'in lieu' gross production tax law had no application to the Osage Nation and did not have until March 3, 1921."

These statements clearly reveal that the court considered January 1st as assessment day and that the ad valorem tax status of property must be fixed as of that day.

Board of Co. Com'rs v. Central Baptist Church, supra, is controlling of the point here involved. In considering the provisions of section 9960, C. O. S. 1921 (sec. 12581, O. S. 1931), it is there held as follows:

"Considering the provisions of section 9960, supra, together with other provisions of our statute relating to taxation, we are of the opinion that the purpose and object of the said section is to fix a definite date or period upon or from which to determine the taxable status of property. If property be subject to taxation on January 1st, then a voluntary change in the ownership of such property between the date fixed by statute upon which property should be assessed for the current year and the completion of the various steps in the assessment and levying of taxes for such year, does not change the taxable status of the property. The date of completion of the assessment of property and levy of taxes thereon is not the determining factor in ascertaining whether property is subject to tax, but rather the ownership and status thereof on January 1st. The proceedings and various steps in the completion of the assessment and levying of taxes for the current year relate back to January 1st of such year.

"The case of Rose v. Stalcup, 78 Okla. 268, 190 P. 396, involved the validity of taxes levied against certain property that previously had been exempt from taxation. The court therein referred to the provisions of section 2, art. 1, c. 107, Sess. Laws 1915, which is the same as section 9960, supra, with certain amendments thereto, from which opinion we infer that the court there considered the ownership or status of property as of January 1st to be the determining factor as to whether the property was taxable for such year."

According to the agreed statement of facts the property involved under this assignment was subject to taxation under the gross production tax statute on January 1st. Therefore, at that time it was not taxable ad valorem. Its taxable status for all purposes for the next tax year was definitely fixed on said date. The decision in the Central Baptist Church Case follows the well-established rule as defined in 2 Cooley, Taxation (4th Ed.) p. 1203, as follows:

"The taxable status of persons and property relates to a certain day each year. There must be some day of the year as of which the power to tax property at all, or the power to tax it to a certain person, is to be determined and that day will fix the power to tax with reference (1) to whether the property was in existence on that day; (2) whether the property was within the jurisdiction so as to have a taxable situs on that day; (3) whether the property was exempt from taxation on that day. * * *"

To that statement we may add with equal force, "whether the property was on that day subject to the particular form of taxation."

Counsel for plaintiff urge the case of In re Texas Company's Assessment, supra, as authority for the contention that the property here in question was subject to assessment for ad valorem taxation for the tax year in question, since the property was not used for the purpose of producing oil or gas during such tax year. In that case the taxpayer operated certain departmental leases on January 1, 1931. The oil and gas produced were at that time by federal law exempt from the gross production tax and the equipment was taxed ad valorem for the tax year ending June 30, 1931. By act of Congress, May 10, 1928, 45 Stat. 496, sec. 3, as amended by Act Feb. 14, 1931, 46 Stat. 1108, the oil and gas were freed from governmental restrictions for purposes of taxation, and in that particular case rendered the oil and gas subject to gross production tax on and after July 1, 1931. The equipment was omitted from the tax rolls for the tax year 1931-1932. Under these circumstances this court's decision was as follows:

"* * * And since the record herein shows that gross production tax was paid on the oil in question from and after July 1, 1931, held, that the machinery and appliances used for the production of said oil were not subject to ad valorem taxation for the tax year 1931-32."

Plaintiff says that the converse of the above statement is true; that it follows that if such machinery and appliances had not been used to produce oil or gas in the tax year 1931-32 (July 1, 1931, to June 30,

1932), such property would have been subject to ad valorem taxation for such tax year and this court would have so held, since such property was in Oklahoma on January 1, 1931, the assessment date for the ad valorem tax year. If the property involved in that case had not been removed, by virtue of its use, from that class of property subject to assessment for ad valorem taxation purposes and placed within another classification for property taxation, this court would, no doubt, have held that the property had been omitted from the tax rolls, since it was within the taxing district on January 1, 1931. That property was actually omitted from the ad valorem tax rolls for the calendar year 1931, and for the tax year 1931-32, but before the assessing authorities attempted to subject the property to ad valorem taxation for such year 1931-32, the property had already been subjected to its full proportion of taxes for that tax year. To have ruled otherwise would have subjected the property to double taxation. Had that property been duly assessed ad valorem on January 1, 1931, and before it became subject to gross production tax, a wholly different question would have arisen from the facts and circumstances. New England Oil & Pipe Line Co. v. State Bd. of Equal, supra.

Conceding that the property here in question did escape taxation, unless it was again employed during all the tax year in the production of oil or gas, there is no legislation in this state fixing the ad valorem tax burden upon such property; and this court may not supply a method of taxation where none exists. That is solely within the province of the Legislature. It was so held in Board of Co. Com'rs v. Ryan, 107 Okla. 278, 232 P. 834, and In re Indian Territory Illuminating Oil Co., 43 Okla. 307, 142 P. 997:

"Where the Legislature has omitted to provide for the assessment of certain kinds of property, it is not within the province or power of the court to make such assessments. No property can be assessed until the Legislature has made proper provision for this purpose."

The property has not been exempted from taxation, nor has it been exempted from assessment. On January 1st, it was legally classified for taxing purposes under section 12434, O. S. 1931, which precluded it from being classified for taxation under any other law. The fact that such classification may have proved a loss to the state in this particular case presents a situation this court is powerless to correct.

In re Texas Company's Assessment, supra, decides that property that has been subjected to gross production taxation for a certain tax year may not be later assessed ad valorem as omitted property and subjected to an ad valorem tax for the same tax year. That case in no way conflicts with the views herein expressed. The judgment of the trial court subjecting said equipment to ad valorem taxation constituted error.

The fifth assignment of error is as follows:

"Said court erred in holding that an order and judgment of the county treasurer of Seminole county, Okla., in dismissing with prejudice a proceeding involving alleged omission from ad valorem taxation equipment of defendant's M. Phillips well number one, section five (5), township seven (7), north, range seven (7), east, for the tax year 1931—fiscal years 1931-1932—where no appeal was prosecuted from the said judgment of the county treasurer as authorized and provided by law, is not res adjudicata and is not a bar to the subsequent listing for taxation said alleged omitted property thereafter in a tax ferret proceeding."

The record discloses that the parties entered into an agreed statement of facts with reference to this property, a part of which is as follows:

"That on assessment date, to wit, January 1, 1931, said company was the owner of oil and gas well equipment of the value of $1,700, located at well No. 1, M. Phillips lease, section 5-7-7, a commercial leasehold, and that said well was producing oil on said assessment date and that said production continued until April 6, 1931, and that a gross production tax was paid on all of the oil produced, in the manner and in amounts as provided by law; that said well was plugged on July 1, 1931, and all machinery, appliances and equipment removed prior to July 1, 1931, except one gas engine and a quantity of casing, which were removed subsequent to July 1, 1931, and prior to January 1, 1932; that the fair cash value of said machinery, appliances, and equipment on hand July 1, 1931, was the sum of $887. * * *"

Under the stipulated facts and for the reasons stated in our disposition of the fourth assignment of error, the oil and gas well equipment was clearly not assessable for ad valorem taxation on or as of January 1, 1931, and could not be subjected to ad valorem taxation under this tax ferret proceeding. In view thereof, we deem it unnecessary to determine the question presented by this assignment of error, that is,

whether or not an order and judgment of a county treasurer dismissing a tax ferret proceeding, from which no appeal was prosecuted · by the state, is final and conclusive upon the state, but hold that the property in question was not subject to ad valorem taxation under this tax ferret proceeding.

The sixth assignment of error follows:

"That said court erred in holding that lease-houses, tool-houses, garages and miscellaneous buildings and equipment situated on commercial leaseholds on January 1, 1933, which were used and in use prior to, on and subsequent to said date, in the production of oil and/or gas and situated on various commercial leaseholds in Seminole county, Okla., where a gross production tax was paid on the oil and/or gas produced from said leasehold prior to, on, and subsequent to January 1, 1933, is subject to ad valorem taxation for the tax year 1933—fiscal year 1933-1934."

On January 1, 1933, the property mentioned and described in this assignment was classified for taxation under section 12434, supra. No authority existed for its assessment ad valorem. The Fourteenth Legislature passed an act (sec. 5, chap. 103, S. L. 1933) amending section 12434, O. S. 1931, effective April 12, 1933. That part of section 5 material to the question under consideration reads:

"It is hereby declared to be the intention of the Legislature that no equipment, material or property shall be exempt from the payment of ad valorem taxation by reason of the payment of gross production tax as herein provided, except such equipment, machinery, tools, material or property as is actually necessary and being used and in use in the production of oil, natural gas and/or casinghead gas or for the mining of asphalt and ores bearing lead, zinc, jack, gold, silver or copper; and it is hereby expressly declared that no ice plants, hospitals, office buildings, garages, residences, gasoline extraction plants nor any equipment or material used in connection therewith, nor any other similar property not actually necessary and being used and in use in the production of oil, natural gas or casinghead gas or other minerals as aforesaid, shall be exempt from payment of ad valorem taxation."

This is not a legislative construction of section 12434, O. S. 1931, but shows the intention of the Legislature to subject to ad valorem taxation under said act as amended a class of property which, by the terms of section 12434, O. S. 1931, before it was amended, had been freed from such taxes by reason of the payment of the gross production tax.

Section 5, chapter 103, S. L. 1933, specifi-

cally subjects this property to taxation ad valorem, but it contains no provision for its immediate assessment or for its assessment prior to the next January 1st. It was not taxable ad valorem January 1, 1933, therefore not assessable for that purpose for the following fiscal year 1933-1934.

The seventh assignment of error is as follows:

"That said court erred in holding that the county assessor of Seminole county, Okla., committed error in canceling an assessment made by him against defendant covering the equipment on its Jacob Pierce lease, well numbers 5, 9, and 11, situated on a departmental leasehold on January 1, 1931, and in holding that said equipment was omitted property and subject to discovery by the tax ferret for the tax year 1931—fiscal year 1931-1932."

Section 12346, supra, under which this proceeding was instituted, authorizes the tax ferret to assist the taxing officials in the discovery of property not listed and assessed. The property here in question had been discovered and listed by the assessor. He had once determined the question of the taxable status of the property for assessment purposes. All matters pertaining to taxation are regulated exclusively by statute. Simmons v. Stuckey, 113 Okla. 200, 241 P. 124; Prince v. St. L. & S. F. Ry. Co., 110 Okla. 141, 237 P. 106. Any taxpayer aggrieved by the action of the assessor in matters of assessment has complete and adequate remedy by review under section 12660, O. S. 1931. As to the taxpayer, that remedy is exclusive. Section 12663, O. S. 1931; Cotton v. Blake, 133 Okla. 60, 270 P. 1105; Cooley, Taxation (4th Ed.) sec. 1201. By the provisions of said section 12660, the assessor's actions in such matters are reviewable by the county equalization board and by the courts.

The state also has ample remedy where the assessor has, by erroneous judgment, failed to subject property to taxation. That remedy is found in section 12587, O. S. 1931. The applicable portion of said section is ᶜs follows:

"If any real or personal property be omitted in the assessment of any year or years, and the property thereby escape just and proper taxation, at any time and as soon as such omission is discovered, the county assessor or the state board of equalization, whose duty it is to assess the class of property which has been omitted, shall at any time, cause such property to be entered on the assessment rolls and tax books for the year or years omitted, and shall,

after reasonable notice to the parties affected, in order that they may be heard, assess such omitted property and cause to be extended against the same on the tax list for the current year all arrearage of taxes properly accruing against it, including therein interest thereon at the rate of six per cent. per annum, from the time such tax should have become delinquent. If any tax on any property liable to taxation is prevented from being collected for any year or years, by reason of any erroneous proceedings, or failure to give notice, or otherwise, the amount of such tax which such property should have paid or should have been paid thereon shall be added to the tax on such property for the current year. * * *"

It is made clear by the provisions of section 12587, supra, and section 12346, supra, that the authority of the assessor and that of the ferret are made concurrent as to any real or personal property that may be "omitted in the assessment of any year or years." But section 12587 makes it the exclusive duty of the assessor to assess any property where the tax thereon has been "prevented from being collected for any year or years by reason of any erroneous proceedings" manifesting a clear legislative intent to draw a distinction between the method of assessing omitted property and assessing property prevented from being taxed by reason of erroneous proceeding. This distinction is brought out to some degree in State v. R. C. Jones & Co., 169 Okla. 38, 35 P. (2d) 908, as follows:

"Section 12587, O. S. 1931, provides for the assessment of any property liable to taxation where any taxes on such property are prevented from being collected for any year or years by reason of any erroneous proceeding, or on account of the same being grossly undervalued on account of false representations or concealments made by the owner or agent in returning the same for assessment. Such subsequent assessment, however, is made by the assessor whose duty it was to assess the property in the first instance. Said section specifically provides that as to such property no contract may be made by the board of county commissioners to pay any one a commission for in any way causing such property to be reassessed. Thus we observe that under these circumstances special provision is made for subsequent assessment or reassessment, naming the person who shall make the reassessment, and prohibiting the making of such reassessment by a tax ferret proceeding. That section provides specifically that, 'this shall not be construed to prevent the board of county commissioners from making contracts for the discovery of omitted property': thus clearly indicating the legisla-

tive intent that property assessed by an erroneous proceeding or undervaluation does not come within the class of 'omitted property,' which may be discovered by the tax ferret and assessed by the treasurer proceeding under sections 12346-12350, supra."

The assessor is the statutory officer possessing exclusive original authority to fix the taxable status of property generally for purposes of assessment thereof for ad valorem taxation. Wilson v. Wiggins, 7 Okla. 517, 54 P. 716. Once he undertakes to fix that status, and the property be subject to taxation in his district, such property may no longer be considered "omitted property" within the meaning of section 12346, supra, but if, by erroneous judgment, he omits the same from the assessment roll, that particular property so omitted is specifically classified as property the tax on which "is prevented from being collected * * * by reason of * * * erroneous proceedings," under the provisions of section 12587, supra, and that classification is exclusive.

The duty of the tax ferret is to aid in the discovery of property not listed and assessed. No duty is imposed upon him to aid the assessing officials in a reconsideration of questions pertaining to assessment.

The county treasurer was without statutory authority to entertain the proceeding questioned under the present assignment of error, and the county court was without jurisdiction to entertain the appeal from his judgment.

By reason of the views herein expressed, the judgment of the trial court is reversed as to the first, second, fourth, fifth, sixth, and seventh assignments of error, and the judgment is affirmed as to the third assignment.

McNEILL, C. J., and BAYLESS, BUSBY, and PHELPS, JJ., concur. OSBORN, V. C. J., and RILEY, WELCH, and CORN, JJ., concur in opinion except as to the law announced in the fifth paragraph of the syllabus and dissent as to that.

WELCH, J. (dissenting). I expressly dissent as to the treatment and disposition of the seventh assignment of error in the majority opinion, and to the rule of law announced in paragraph 5 of the syllabus.

The seventh assignment of error reads as follows:

"That said court erred in holding that the county assessor of Seminole county, Okla., committed error in canceling an assessment made by him against defendant covering

the equipment on its Jacob Pierce lease, well Numbers 5, 9, and 11, situated on a departmental leasehold on January 1, 1931, and in holding that said equipment was omitted property and subject to discovery by the tax ferret for the year 1931—fiscal year 1931-1932."

The facts as to this assignment are shown in the following language in the agreed statement of facts:

"That on June 10, 1931, the county assessor of Seminole county, Okla., listed said property for taxation for the year 1931 (fiscal year 1931-1932) and thereafter, to wit, on July 6, 1931, said county assessor canceled said assessment herein mentioned."

It will be noted that the taxpayer did not return this property for assessment. No reason is shown why the county assessor listed it for taxation in June, nor why he canceled such assessment in July.

The law assumes that an official will discharge his duty, and, therefore, I assume that in assessing the property in June the assessor was acting under sections 12587, 12595, and 12597, O. S. 1931. Our statute nowhere authorizes the county assessor for any purpose or for any reason to strike property from the assessment rolls, or to cancel an assessment by order or by act. I, therefore, assume the order of cancellation was erroneous, as I think is also the assumption by the majority opinion in announcing the rule of law in reference to this matter in paragraph 5 of the syllabus.

But it is to be noted that the defendant insists that this property, so assessed and canceled by the assessor, is not omitted property under section 12587, O. S. 1931.

The majority opinion holds, as stated in paragraph 5 of the syllabus, that such property is not omitted property under section 12346, O. S. 1931.

Thus the defendant insists that, while this property was in truth and in fact omitted from the assessment roll as transmitted by the county assessor to the equalization board, and was omitted from the tax rolls in the office of the county treasurer, and was thus wholly omitted from taxation, the defendant urges that it was not omitted on account of the fact that while the county assessor had the assessment roll, and while that roll was in the process of being prepared for transmission to the equalization board, the county assessor in June listed the property on that roll and a few days later in July removed that property from that roll.

Since the county assessor had no specific authority to cancel assessments, it seems clear to me that his act in canceling the assessment or in removing the assessment from the rolls, or of obliterating the same, was merely undoing in July what he had done in June, thus leaving the matter as if he had done nothing in the matter in June. It seems clear to me that at all times prior to June 10th, this property was in all respects omitted property, being omitted from taxation and omitted from the assessment rolls and omitted from the tax rolls, and the same property was in the same situation at all times after July 6th, being then likewise omitted. Then, can it be said that the act of the county assessor in listing the property on June 10th, and then withdrawing that listing on July 6th, could change the situation? I think not.

Surely, if the assessor had done nothing in the first place, that is, had not listed the property, it would have remained in all respects "omitted property." Then, since his subsequent act in July of canceling his listing amounted to nothing more than the undoing of his act of listing, it seems to me that the result remains the same, and that this then untaxed and unassessed property remained "omitted property."

As to this assignment of error, I think the trial court should be sustained, and that the rule of law announced in paragraph 5 of the syllabus is erroneous.

I am authorized to say that Mr. Justice CORN concurs in these views.