**In the Matter of the Protest to Assessment of Tax, HOME–STAKE PRODUCTION COMPANY.**

**No. 42163.**

Supreme Court of Oklahoma.

Nov. 25, 1969.

Thomas A. Landrith, Jr., Tulsa, for appellant.

Albert D. Lynn, E. J. Armstrong, R. O. Ingle, Oklahoma City, for appellee.

BERRY, Vice Chief Justice.

This is an appeal from an order of the State Board of Equalization, which denied Home-Stake Production Company's protest against a 1966 ad valorem tax levy upon personal property, a gas pipeline extending approximately 6 miles from a well to a truck pipeline, in Payne County, Oklahoma.

In October 1961 the Oklahoma Tax Commission, herein the Commission, made written inquiry concerning Home-Stake's construction of a pipeline which had not been returned for taxes, and asked to be advised concerning what had been done toward assessment. Home-Stake, hereafter the Company, answered asserting because the Commission had not permitted deduction of proportionate cost of construction and operation of the line from the gross production tax, the Commission's position seemed to be this line was an extension or gathering line and therefore not subject to ad valorem taxation. The Commission reponded, pointing out the gross production tax is an "in lieu" tax exempting minerals, machinery and equipment *at the well* from ad valorem taxation and, since only the Company's pumps and tanks were exempt, the pipeline was subject to ad valorem taxation.

The Company replied pointing out Commission's legal department took the position this pipeline was not a gas line within meaning of the term, and therefore required

payment of gross production tax upon the same basis as gas produced and sold on the lease. Further, Commission's ad valorem tax division inconsistently maintained the pipeline was subject to ad valorem taxation because not within classification of "machinery and equipment at the well." Company urged the Commission was bound (1) to treat the pipeline either as a gathering line, exempt from ad valorem taxation because of the "in lieu" gross production tax; or (2) the line should be treated separate and apart from machinery and equipment and its cost subjected to ad valorem taxation, but depreciated against the gross production tax paid.

The record shows assessment of $7,042.00 for this property in 1963. The company advised the county treasurer (November 1, 1963) the property should be exempt from taxation. The treasurer replied the Commission assessed the property each year as a public service corporation, and there were delinquent taxes ($1,481.55) owing for years 1962–1965, inclusive. This summary reflects basis for the controversy and the position Company has maintained.

May 5, 1966, the State Equalization Board, hereafter the Board, placed valuation of $7,150.00 upon this property, notified Company by mail of such action, and advised this assessment would become final, under 68 O.S.1961, § 15.47, unless written protest was received within 10 days. Company filed letter protest and then filed formal protest which the Board heard August 9, 1966. Questions concerning failure to file timely protest, and existence of adequate remedy at law were raised. The Board withheld ruling thereon, and proceeded with hearing upon the merits, and no issues involving these matters are presented on appeal.

The evidence showed Company owned one producing gas well on the described tract. There is no other commercial gas production in the area and the Cities Service Gas Company is the only market. By contract Cities Service agreed to purchase, at 13¢ per mcf., all gas delivered to the inlet to the trunkline, measured by the purchaser at the described delivery point. The contract provided:

"6 (b) Seller shall construct, own and operate all pipelines, pressure regulating facilities, drips, separators, compressor, cooling and dehydration equipment and other facilities as may be necessary to deliver gas hereunder at said point of delivery and measurement against the verying pressures contained in Buyer's pipelines and in accordance with all the terms and conditions hereof. * * *"

This contract also provided 6(c) all property and equipment installed by either remained property of the installing party. Between the parties each assumed all responsibility for operation, maintenance, and obligations arising out of property which that party installed, each to hold the other harmless from any damages resulting from operation of equipment each party installed.

Evidence before the Board established matters summarized above. After hearing, the Board determined the protest upon consideration of the single issue whether that portion of Company's line between the dehydrator and the trunkline (Cities Service) was equipment necessary, in use and used for production of natural gas. After deleting items of equipment between the well and dehydrator, because in use and used for production, the Board found $5,438.00 represented maximum liability, and entered assessment in this amount.

To reverse the Board's denial of the protest Company contends:

"Where the producer of a gas well owns and operates a pipe line which is necessary for and used in the transportation of gas from the well-head to the gas purchaser's trunkline where the gas is metered and sold, such pipe line is exempt from ad valorem taxation by the payment of gross production tax by virtue of 68 O.S.Supp., Sec. 1001(g)."

It is urged the statute, 68 O.S.Supp.1965 § 1001, in pertinent part provides:

"(g) No equipment, material or property shall be exempt from the payment

of ad valorem tax by reason of the payment of the gross production tax as herein provided except such equipment, machinery, tools, material or property as is *actually necessary and being used and in use in the production* * * * of natural gas and casinghead gas; * * *." (Emphasis supplied.)

Summarized, Company's argument then states no gas is carried in the line except production from one well; and, production involves more than bringing gas to the wellhead, since it must be confined until marketed. Thus, because of its inherent nature, natural gas cannot be "produced" until it is measured and tested for value at the market place which, in this instance, is at the connection with the trunkline where measured and sold. As authority for this argument Company cites decisions from another jurisdiction holding "production", under a Texas gas lease, means bringing gas to the surface and marketing same. Duke v. Sun Oil Co. (C.C.A. 5) 320 F.2d 853; Gulf Oil Corp. v. Reid, 161 Tex. 51, 337 S.W.2d 267. And, completion of a gas well capable of producing in paying quantities, but shut in for lack of pipeline facilities, or other reasons, does not constitute production within terms of a royalty deed containing no shut-in clause. Midwest Oil Corp. v. Lude (Tex.Civ.App.) 376 S.W.2d 18; Hickey v. Spangler (Tex.Civ.App.) 358 S.W.2d 216, 219. Our court has not had occasion to consider the precise question. We note, however, our decision in McVicker v. Horn, Robinson and Nathan et al., Okl., 322 P.2d 410, 71 A.L.R.2d 1211, which concluded that, absent specific provision therefor, marketing of oil or gas is not required in order to satisfy the habendum clause of a lease requiring production within one year, or as long thereafter as either is produced.

Company also urges that, despite fundamental differences between production from a gas well as distinguished from an oil well, prior decisions establish exemption of this pipeline from ad valorem taxation. This premise is derived from the decision in In re Sinclair Prairie Oil Co., 175 Okl. 289, 53

P.2d 221. The case holds oil is produced for gross production purposes, within contemplation of the statute, when brought to the surface and confined in such manner as permits gauging as to quantity and gravity. Oil held in tanks for such purpose on January 1st is to be considered in process of production. Tanks in which this oil is confined are treated as an integral part of production and exempt from assessment for ad valorem taxation. See Going v. Shaffer, 89 Okl. 46, 213 P. 736. Under Sinclair, supra, and related cases, Company insists by analogy this gas, neither brought from the well, confined, nor capable of measurement before delivery to the trunkline cannot be treated as "produced" for purposes of assessment. The argument gas cannot be considered produced until marketed, and cannot be marketed until carried to the trunkline, is the basis for Company's conclusion the pipeline involved must be treated as a necessary and integral part of production for tax purposes.

The basis and intent of gross production tax statutes, 68 O.S.Supp.1965 § 1001 et seq., require no discussion. A tax is levied upon gross value of oil or gas produced. Production is completed when oil is brought to the surface and confined so measurement and testing for value can be completed. This value is defined as the posted field price for like kind, character and quality from the same field without any deduction for transportation charges. Atlantic Refg. Co. v. Okl. Tax Comm., Okl., 360 P.2d 826. Argument that for purposes of taxation gas production is not complete without a market, and no market can be had without a pipeline by which gas can be delivered and measured is not decisive of the question. There is no evidence showing impossibility of measuring and testing for value at the well-head, or as the gas flows from the dehydrator into the pipeline, other than contract requirements [5(a), (b), 6(a)] relating to delivery to the trunklines.

The contract, introduced in evidence before the Board, disclosed execution on November 9, 1959, by the Company and an-

other operator in the same field, as Seller. Each named Seller had drilled a gas well on separately described "Dedicated" leases and, under terms of the gas purchase contract, proposed " * * * to construct a pipeline and appurtenant facilities to deliver and sell to Buyer all gas hereafter produced from said Dedicated Leases; * * *." Thereafter the contract specified quantity, quality, price, and measurement at a specified point of delivery designated by, and upon which Buyer was to install and operate metering equipment and appurtenant facilities. Buyer was to install a meter gauge at each well from which Seller delivered gas under the contract. All "pipelines" and related facilities were to be constructed, owned and operated by Seller.

Related phases of the present problem were considered and adjudicated in the recent case of Home-Stake Production Company v. Board of Equalization, etc., Okl., 416 P.2d 917. In that case, and by supplemental opinion adopted on rehearing, we most carefully pointed out the true test to be applied is whether the property is actually necessary, being used, and in use in production, and the question is determinable as an issue of fact.

After hearing, the Board denied Company's protest for the sole reason the " * * * portion of the pipeline between the hydrator and the trunkline of Cities Service is not equipment necessary, in use, and used for the production of natural gas, * * *." In this connection it is noteworthy evidence showing right-of-way purchase from landowners whose property was traversed by the pipeline, tends to negate the claim such installation was used in production, rather than primarily for transportation of gas from the well.

The evidence did not establish gas produced was incapable of being measured and tested before passing into the pipeline. Under plain terms of the contract the line was constructed solely for transportation of gas. The contract was executed in contemplation of Sellers' delivery of gas produced at the market, Cities Service trunkline, and at Sellers' expense if sale of production was to take place. To obtain a market Sellers agreed to transport gas production from two wells to the market. That one Seller eventually failed to perform, or participate, or that the contract itself may have been improvidently entered into, are not factors for consideration in applying the test for exemption from taxation. A pipeline contracted and constructed solely to transport gas production does not come within the exemption from ad valorem taxation specified in § 1001(g), supra.

The Board determined as a question of fact this pipeline was not equipment being used and in use in producing gas from Company's well. The exemption from ad valorem taxation by payment of gross production taxes under § 1001(f) does not extend to Company's pipeline which transports gas production from the dehydrator to the trunkline where sold.

Judgment of the Board of Equalization denying the protest is affirmed.

All Justices concur.