## PETER W. BIELKE v. AMERICAN CRYSTAL SUGAR COMPANY.[1]

November 24, 1939.

No. 32,077.

[1] Reported in 288 N. W. 584.

Hayner N. Larson, Faegre, Benson & Krause, and Lewis & Grant, for appellant.

A. H. Jacobson and George W. Olson, for Unemployment Compensation Division of Industrial Commission.

STONE, JUSTICE.

This is a test case and the first coming to us under the Minnesota unemployment compensation law, Ex. Sess. L. 1936, c. 2, as amended by L. 1937, c. 306.[2] Peter W. Bielke, petitioner below and respondent here, filed a claim for unemployment benefits which was allowed first by an "appeal tribunal" (L. 1937, c. 306, § 5) and then by the commission. The allowance took no account of the conceded fact that, as an employe of relator's beet sugar factory at Chaska, Bielke's employment was seasonal as defined by Ex. Sess. L. 1936, c. 2, § 5(f)(1). The result was an order (Commissioner Debel dissenting) allowing benefits upon the basis of continuous, rather than seasonal, employment. Automatically the amount was charged to relator's unemployment compensation

[2] 3 Mason Minn. St. 1938 Supp. § 4337-21, et seq.

fund account with the state. It makes direct appeal to this court, as permitted by L. 1939, c. 443, § 7(I).

There is no need for comprehensive summary of the law. Enough for the present is the following. Money payments, known as "benefits," are assured the individual upon conditions stated and in amounts to be determined, within fixed limits, by the commission, aided by its referees and appeal tribunals. The "benefit year" for any individual means a "52 consecutive week period." Ex. Sess. L. 1936, c. 2, § 2(r). " 'Base period' means the first eight of the last nine completed calendar quarters immediately preceding the first day of an individual's benefit year." Ex Sess. L. 1936, c. 2, § 2(s).

Section 5, as amended by L. 1937, c. 306, § 3, is the one fixing benefits. Subd. (f) has to do with benefits in seasonal and irregular employment and is now determinative. It consists of but one paragraph. We divide it into two in aid of the discussion. As thus divided, it reads:

"(1) Whenever in any industry or class of occupation in any industry it is customary to operate only during a regularly re-curring period or periods of less than 40 weeks in a calendar year, then the rights to benefits shall apply only to the longest seasonal period or periods which are customary in such industry or class of employment.

"It shall be the duty of the commission prior to January 1, 1939, and thereafter from time to time, to ascertain and determine, or redetermine, such seasonal period or periods for each such seasonal employment. When the commission has determined such season, it shall also fix the right to benefits and the conditions required for the payment of benefits to unemployed persons in such industry or class of occupation and shall modify the requirements of the right to benefits and the conditions required for the payment of benefits in such manner, that the total benefits paid to such persons will be in reasonable proportion to the total contributions to the fund of employers in such occupation or industry on account of such seasonal employes."

There follows this direction:

"(2) The commission shall also, prior to January 1, 1939, and from time to time thereafter, ascertain and determine, or redetermine, employment in which it is customary to operate only at irregular periods, and shall fix the right to benefit and the conditions required for payment of benefits to persons having such employment, and shall modify the requirements of the right to benefit and the conditions required for the payment of benefits in such manner, that the total benefits paid to such persons will be in reasonable proportion to the total contributions to the fund of employers in such occupation or industry on account of such seasonal employes."

■ The foregoing is enough to reveal the fundamental misconception pervading the decision of appeal board and commission. It is matter of common knowledge, herein so conceded all along, that in Minnesota beet sugar factories, except for the relatively small maintenance crews employed the year round, are engaged in a seasonal industry. The longest work season, or "campaign" does not exceed 90 days. Temporary employes at receiving stations customarily have about 45 days of work.

The first sentence of § 3(f), which is the first paragraph of our quotation, declares substantive law and right. In the case of seasonal employment, "the rights to benefits shall apply only to the longest seasonal period or periods which are customary." The commission has correctly ruled that "a seasonal worker shall have a right to benefits only with respect to unemployment occurring during the longest period or periods of seasonal employment." Rule 5(b). This rule is one of those adopted by the commission November 30, 1938, "for the administration of this act," in compliance with L. 1936, c. 2, § 10(a, c). The commission also ruled that:

" 'Seasonal employer' means an employer who has been granted a seasonality determination by the commission." Rule 5(a)(1). They confined the scope of seasonal employment to "employment

performed subsequent to the date of seasonality determination or December 31, 1938, whichever is the later."

To the extent that such rules attempt to change substantive and mandatory portions of a statute, they are a nullity. It is axiomatic that an administrative body can neither make nor change substantive law. It may adopt administrative rules, but in doing so cannot change existing, or make new, law.

So far, and with nothing more of law or fact, it would be obvious and the whole argument so assumes, that the allowance of benefits to Mr. Bielke was erroneous.

The only attempt to justify the allowance is based exclusively upon that portion of the statute which we have included in the second paragraph, as quoted above, of § 3(f), and the direction, also quoted above, that the commission, prior to January 1, 1939, and from time to time thereafter, shall catalogue the seasonal industries, benefits, and the conditions required for their payment to seasonal employes.

All the directions so relied upon in support of the allowance to Mr. Bielke are procedural only. They in no way qualify the substantive law of the first sentence of § 3(f). They are but instructions for the erection of an administrative mechanism wherewith to operate the substantive law. The command of the substantive remains binding notwithstanding failure of the commission (at the time the matter had to be decided by the appeal board) to set up the administrative mechanism as directed.

The task of launching such a statute is enormous, and such delay as there has been is not subject for just criticism. But such delay, however necessary, did not relieve the commission, its referees, or appeal tribunals, from giving all the substantive provisions of the law, those declaring rights and fixing obligations, the effect intended by the legislature.

Substantive law is one thing; procedural law another. In new and remedial legislation, the two normally go together. But the procedural does not, unless so stated or plainly implied, qualify or limit the substantive. Rather, its only purpose is, by imple-

mentation, to make the whole thing work. Delay in setting up the machinery of administration should not deprive anyone of a substantive right. Nor should it operate, unless the legislature itself has so stated, to confer upon another a new sort of right not otherwise granted.

■ "Generally speaking, those provisions which do not relate to the essence of the thing to be done and as to which compliance is a matter of convenience rather than substance are directory, while the provisions which relate to the essence of the thing to be done, that is, to matters of substance, are mandatory. * * * In many cases the precise time when an act is to be done is not of the essence. Where a statute directs the doing of a thing in a certain time without any negative words restraining the doing of it afterwards, the provision as to time is usually directory, and not a limitation of authority." 25 R. C. L. p. 767.

The foregoing covers this case. Even if the commission had not formulated its administrative rules within the period required by statute (it was extended by the 1937 act from January 1, 1938, to January 1, 1939) it could have done so afterwards. In the meantime, it was under duty to apply the substantive provisions of the law to cases as they arose.

■ By L. 1939, c. 443, the unemployment compensation law was amended in several particulars. The one now important is § 4. First there is a definition of "wage credits" as applied to seasonal laborers. Then, in § 4(D)(1) appears this altered definition of seasonal employment:

" 'Seasonal employment' means employment in any industry or any establishment or class of occupation in any industry which is engaged in activities relating to the first processing of seasonally produced agricultural products in which, because of the seasonal nature thereof, it is customary to operate only during a regularly recurring period or periods of less than 26 weeks in any calendar year. The commission shall, after investigation and hearing, determine and may thereafter from time to time redetermine such customary period or periods of seasonal operations. Until

the effective date of such determination by the commission, no employment shall be deemed seasonal."

There follow explicit provisions putting upon employers the initial burden of applying to the commission for determination of the issue of seasonality. This is new matter not effective until April 22, 1939, so it cannot govern this case, which arose and comes to decision under prior law. But we are asked to use it as an aid in construing the former statute. It is enough that in the elder law we have found for this case nothing of doubt which is fit occasion for construction. All extraneous aids to construction "are only admissible to solve doubt, and not to create it." Railroad Comm. v. C. B. & Q. R. Co. 257 U. S. 563, 589, 42 S. Ct. 232, 66 L. ed. 371, 383, 22 A. L. R. 1086.

But if that be error, and we were to seek aid in the new law of 1939, we would find nothing, more than that already discussed, of present relevance—nothing in any event to allow us to approve the act of an administrative commission, which amounts to the conversion of a mere procedural provision into a bar to a purpose of the legislature plainly declared in the same law. We do not so far allow procedure to control fundamental law, nor form so far to change substance.

In passing, it should be noted that the law of 1939 may need some construction in respect to the declaration that "until the effective date of such determination by the commission, no employment shall be deemed seasonal." If we assume finality for such a determination, it may apparently have an "effective date" other than that of its making or filing. If so, that "effective date" is to be fixed by the commission. Apparently the thought was that the "effective date" should be fixed as facts require, and that where the commission finds that a given industry is seasonal and has been so from the beginning, it should fix the "effective date" of its determination accordingly.

The good sense of the case, to say nothing of the equities, may require just such an order, effective *nunc pro tunc*. Even without any such determination by the commission, the contributions by

a seasonal employer are computed and made on the basis of his seasonal pay roll. The contributions are limited by the law itself in application to the actual and seasonal pay roll. Hence, if benefits are allowed, to the maximum amount, without restriction for seasonality, actuarial difficulties are likely to follow. In the category of seasonal industries, contributions and benefits might thereby be thrown into embarrassing disproportion.

The initial construction and application of the law fortunately rest in the competent hands of the industrial commission. What we have said concerning the change made by the amendatory act of 1939 is intended only to show that in no view can it control or even aid present decision.

The order must be reversed for further proceedings not inconsistent with this decision. Mr. Bielke may have a right to benefits based on other than seasonal employment, which is the only sort presently involved. This decision is without prejudice to such right, if it exists.

So ordered.

