**ATLANTIC REFINING COMPANY,**
Plaintiff in Error,

v.

**OKLAHOMA TAX COMMISSION,**
Defendant in Error.

No. 38094.

Supreme Court of Oklahoma.

Sept. 22, 1959.

Rehearing Denied and Dissenting
Opinion Filed April 4, 1961.

828

Charles B. Cochran, Richard W. Fowler, Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Oklahoma City, for plaintiff in error.

R. F. Barry, Oklahoma City, for defendant in error.

John S. Carlson, John L. Arrington, Jr., Carlson, Lupardus, Matthews, Holliman & Huffman, Tulsa, George H. Bowen, Tulsa, Howard Davis, Oklahoma City, Jesse M. Davis, Joseph A. Gill, J. Paul Greve, Howard H. Harris, Tulsa, Kenneth Heady, Bartlesville, Mainard Kennerly, Oklahoma City, Hawley C. Kerr, Tulsa, Yates A. Land, Miriam Lashley, John S. Miller, Harry D. Page, Tulsa, Robert W. Richards, Oklahoma City, Robert Rolston, Tulsa, Nathan Scarritt, Enid, Norton Standeven, Oklahoma City, Robert J. Stanton, Tulsa, R. M. Williams, Bartlesville, John W. Wolfe, Okahoma City, amici curiæ.

Mac Q. Williamson, Atty. Gen., James C. Harkin, Asst. Atty. Gen., for State of Oklahoma ex rel. Raymond Gary, Governor of the State of Oklahoma.

IRWIN, Justice.

The Atlantic Refining Company, hereinafter referred to as Atlantic, filed its gross production tax returns with respect to oil produced by it in Texas, Beaver, Cleveland, and McClain counties for the period November 1, 1956, through May 31, 1957. There were no pipe line connections to any of the wells or leases involved and in computing the tax due, Atlantic deducted from the posted or field price of the oil, the cost of trucking or hauling the oil to the pipe line or the station of the purchaser.

The Oklahoma Tax Commission used the posted or field price as the measure in computing the gross production taxes (without allowing the deduction for the cost of trucking or hauling) and made an additional assessment.

Atlantic paid the additional tax under protest and requested a hearing before the Oklahoma Tax Commission as prescribed by the Uniform Tax Procedure Act, being Title 68 O.S.1951 §§ 1470–1474. Hearing was had and thereafter the Tax Commission entered its order affirming the additional assessment and Atlantic duly perfected its appeal to this Court.

The Tax Commission contends that under the last paragraph of Title 68 O.S.1951 § 821, the State Board of Equalization has exclusive jurisdiction to determine whether the gross production tax assessed in accordance with the Gross Production Act is excessive, and that Atlantic's appeal to this Court is not proper. The pertinent portion of Section 821 is as follows:

"* * * The State Board of Equalization, upon its own initiative, may, and upon complaint of any person who claims that he is taxed too great a rate hereunder, shall take testimony to determine whether the taxes herein imposed are greater, or less than the general ad valorem tax for all purposes would be on the property of such producer subject to taxation in district or districts where the same is situated and also the value of oil, gas, or mineral leases, or of the mining or mineral rights, the machinery, equipment, or appliances used in the actual operation of in and around any such well or mine, the value of the oil, gas, asphalt or any of the said mineral ores produced and any other element of value in lieu of which the tax herein is levied. The said board shall have power and it shall be its duty to raise or lower the rates herein imposed to conform thereto. An appeal may be had from the

decision of the State Board of Equalization thereon, by any person aggrieved to the Supreme Court, in like manner and with like effect as provided by law in other appeals from said Board to said court; provided, that after such tax has been collected and distributed, or paid without protest, no complaint with reference to rate thereof, shall be heard or considered."

We cannot sustain the Tax Commission's position as Atlantic is not contending the rate of the tax is too high, but proposes the Tax Commission has incorrectly determined the amount upon which the tax should be computed. The question presented to the Tax Commission was the construction of the first part of Sec. 821, and the intention of the Legislature in its use of the phrases "the actual cash value thereof at the time and place of production" and "the gross value of the production" in levying the tax.

Had Atlantic thought the gross production taxes as assessed were greater than the taxes would have been under a general ad valorem assessment, it could have proceeded under the above portion of Sec. 821, and requested the State Equalization Board for a determination from evidence submitted. However, Atlantic only proposes that the value of the oil on which the gross production tax was assessed is incorrect, and is therefore entitled to appeal to this Court under the Uniform Tax Procedure Act. When parts of an act are reasonably susceptible of a construction that will give effect to both, without violence to either, such should be adopted. Rogers v. Oklahoma Tax Commission, Okl., 263 P.2d 409.

■ Having disposed of the jurisdictional question we will direct our attention to the merits of the case. Although Atlantic and the Tax Commission propose several issues and in support thereof, present their theories and rules of law, there is only one basic issue to be determined: Are the costs for trucking or hauling oil to a pipe line or place of delivery deductible in computing the gross production tax

where there are no pipe line connections to the leasehold? Atlantic contends the tax should be computed on "the actual cash value thereof at the time and place of production" or "gross value at place of production", both being the actual value received, less transportation and handling from the place of production. The Tax Commission contends that the tax should be assessed on the "gross value" being the posted field price, without deducting the cost of transportation and handling from the place of production to the pipe line or the place of delivery.

■ Without question the gross production tax levied by virtue of Title 68 O.S. 1951 § 821, is a property tax levied in lieu of an ad valorem tax. Sinclair Prairie Oil Company v. State, 175 Okl. 289, 53 P.2d 221; State v. Indian Royalty Co., 177 Okl. 238, 58 P.2d 601; In re Skelton Lead & Zinc Company's Gross Production Tax, 81 Okl. 134, 197 P. 495; Meriwether v. Lovett, 166 Okl. 73, 26 P.2d 200; Josey Oil Co. v. Board of Commissioners of Payne County, 107 Okl. 266, 231 P. 272.

■ We have heretofore determined when oil is produced for gross production tax purposes. In Sinclair Prairie Oil Co. v. State, supra, we said [175 Okl. 289, 53 P.2d 223]:

"Oil may be said to be produced for gross production taxation purposes within the meaning of the statute when it is brought to the surface and confined in such a manner as to permit its measurement as to quantity and its testing as to value."

■ Having determined the nature of the tax and when oil is produced for gross production tax purposes, we next consider the statute governing the basis upon which the computation of the tax should be made. Title 68 O.S.1951 § 821, so far as applicable, provides:

"Every person, firm, association or corporation engaged in the mining or production, within this State * * * of petroleum or other crude oil or

other mineral oil, natural gas and/or casinghead gas, shall, monthly, file with the Oklahoma Tax Commission, a statement under oath, on forms prescribed by it, showing the location of each mine or oil or gas well operated or controlled by such person, firm, corporation or association during the last preceding monthly period; the kind of such mineral, oil or gas produced; the gross amount thereof produced; *and the actual cash value thereof at the time and place of production*, including any and all premiums received from the sale thereof; * * *, and shall, at the same time pay * * * *a tax equal to five per centum of the gross value of the production of petroleum or other crude or mineral oil which is hereby levied* * * *."

A careful analysis of the above statute discloses that "actual *cash value* thereof at the time and place of production" appears only in that portion relating to the procedure for filing of monthly reports and is an item of information which must be listed with the kind of mineral produced, gross amount produced, etc. The substantive enactment or the "levying" portion of the statute reads "five per centum of the *gross value* of the production." Since a procedural portion of an act is for the purpose of implementation and does not, unless particularly stated, qualify or limit a substantive portion; the substantive portion of the statute is controlling and the tax should be levied on five per centum of the "gross value" and not on the "cash value." Bielke v. American Crystal Sugar Company, 206 Minn. 308, 288 N.W. 584.

▮ The term "gross value of the production" was not defined in the gross production act nor has its meaning been judicially determined by this Court. However, Atlantic contends the 1955 Legislative enactment which levied a gross production tax on uranium, (Title 68 O.S.1957 Supp. § 848(5), which defined the term "gross value" as being "the value of ore immediately after being mined or produced,

therefore, the amount received or the amount that could or should have been received", should be controlling as the Legislature intended that the same definition be applied in determining the gross value of oil under Section 821, supra.

It is to be noted that in levying a gross production tax on uranium properties the Legislature did not amend the Gross Production Act in controversy which indicates that the Legislature intended for said act to stand as it existed, and the administrative construction that had been placed thereon to also stand. In this connection the 1955 Uranium Act specifically provided "that any mineral, substance or matter subjected to the tax levied by the aforesaid Sections of the Statute (Gross Production Act now codified as Sections 821 to 842, inclusive) shall not be subjected to the tax levied by this Act." Apparently the Legislature believed that uranium properties were in fact a different subject and foreign to oil. We therefore hold that the referred to definition would not be controlling as the legislative definition of "gross value of the production" for oil properties.

▮ Since the Legislature did not define the term "gross value", nor can the meaning be adduced from the Gross Production Act, we will consider the intent of the Legislature in its usage. The act has not been materially amended since its first enactment, and in determining the legislative intent, it is our privilege to look to the history of the times when the act was passed. Usually that history tends strongly to disclose the reason for legislation and the conditions sought to be remedied. In 50 Am.Jur., Sec. 236, page 224, the following rule is stated:

"* * * Since, in determining the meaning of the terms of a statute, the aim is to discover the connotation which the Legislature attached to the words, phrases and clauses employed, the words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted, and the statute must be con-

strued as it was intended to be understood when it was passed."

In the case of Chicago, R. I. & P. Railroad Co. v. Gist, 79 Okl. 8, 190 P. 878, 879, we held:

"Courts, in construing a statute, may with propriety recur to the history of the times when it was passed; and this is frequently necessary, in order to ascertain the reason as well as the meaning of particular provisions in it.

"The history of the times during which a law was enacted tends strongly to disclose the reasons for the act, and therefore the evils sought to be remedied.

"Whenever light can be derived from such sources, the courts will take judicial notice of the facts of contemporaneous history, the prior state of the law, the particular abuse or defect which the act was meant to remedy, and will then apply the language of the act to such state of affairs."

See also Silmon v. Rahhal, 178 Okl. 244, 62 P.2d 501 wherein the above case was cited with approval.

Reviewing the history of the oil business in Oklahoma we find where pipe lines were not available, the oil was moved to what was called a loading rack or railroad spur and loaded into tank cars and transported by rail to the ultimate processor. The value of the oil was determined by and the tax assessment made on the posted field price in that area and each producer received the same price and paid the same tax. The field price was determined by the gravity of oil and all oil of the same gravity was considered oil of like kind, character and quality and the price paid to the producers was the same and the gross production taxes paid were computed on the same basis. There was no other known method of determining the gross value of the oil produced except by the posted field price based on the gravity of oil, whether the oil has to be hauled or placed in a pipe line.

In connection with the history of the times, it is well to consider how the act has been administered. The State Auditor was first charged with the duties of administering the act and his original interpretation of the term "gross value" was the posted field price in the field or area where the oil was produced. The Tax Commission, since it took over the enforcement of the act in 1931, has consistently construed the term in an identical manner. From the effective date of the act to the date Atlantic objected to the rule used by the Commission in computing the tax, the tax has been paid, without exception, on the posted field price in the field or area where produced without any deductions. Those liable for the tax recognized the interpretation placed on the phrase by those responsible for the enforcement of the act and acquiesced in such interpretation.

■■■ We have held that an interpretation of an ambiguous statute by a department charged with its administration and enforcement, where such construction has been uniform and consistent, observed, acted upon and acquiesced in for a long period of time, is to be given great weight by this court in considering the statute. In the case of Lincoln National Life Ins. Co. v. Read, 194 Okl. 542, 156 P.2d 368, 369, we said:

"The long-continued construction of a statute by department of government charged with its execution is entitled to great weight and should not be overturned without cogent reasons. Great Northern Life Insurance Company v. Read, 10 Cir., 136 F.2d 44."

Quoting from the Federal Court case, Great Northern Life Insurance Company v. Read, supra, we find the court used this language on page 47.

" * *. * The long-continued construction of a statute by a department of government charged with its execution is entitled to great weight and should not be overturned without cogent reasons. The Legislature of Oklahoma has convened many times during this period of administrative construction without expressing its dis-

approval. That silence may be regarded as acquiescence in or approval of the administrative construction. Similar statutory provisions have been so construed."

From the time the administrative interpretation was first made by the State Auditor, no action has been taken at any session of the Legislature to disavow such interpretation as placed on the act by the State Auditor and later by the Tax Commission, and we approve the above wording that silence by the Legislature may be regarded as acquiescence in or approval of the administrative construction.

■ We cannot sustain Atlantic's contention that the act as construed by the Tax Commission is violative of Article X, Sec. 5, of the Constitution of Oklahoma, which provides, "Taxes shall be uniform upon the same class of subjects." What could be more uniform than the manner in which gross production taxes are assessed? Owners of the same gravity of oil, irrespective of the location of production, when it is brought to the surface and confined in such manner as to permit its measurement as to quantity and its testing as to value, have the same basis for determining the amount of taxes due. In construing ambiguous tax statutes this Court should adopt an interpretation which lays the burden of tax uniformly and we therefore hold the Legislature has adopted and the Tax Commission has promulgated a uniform tax on production of oil that does not violate the Constitution.

For the foregoing reasons, the order of the Oklahoma Tax Commission is affirmed.

WILLIAMS, V. C. J., and WELCH, JOHNSON and BLACKBIRD, JJ., concur.

DAVISON, C. J., and HALLEY and JACKSON, JJ., dissent.

Justice William A. Berry certified his disqualification to participate in the decision of this case, whereupon Honorable John C. Andrews of Oklahoma City was duly appointed to serve in his stead as Special Justice.

ANDREWS, Special Justice (dissenting).

This is a production tax. It is not a production and transportation tax. Its "in lieu" effect exempts production facilities from ad valorem taxation. It does not exempt transportation facilities. The gross value of the production must be determined before the value thereof is increased by transportation.

In case oil, gas or casinghead gas is sold under circumstances where the sale price does not represent the cash price thereof, the Tax Commission is authorized to require the tax to be paid upon the basis of the prevailing price in the field. However, for convenience in administration the Commission would like to ignore the actual sale price under all circumstances. Such practice is not in compliance with 68 O.S. 1951 § 833.

A sale under circumstances indicating the absence of armslength bargaining justifies the application of the prevailing field price. But when a bona fide sale of the production has occurred, the sale price should be accepted as the proper measure of value.

The best means of determining value is by a bona fide sale. There is no claim that the price paid for the production at the wellhead was the result of collusion. It established the actual value of the production. The gross production tax should be based upon such sale price.

I therefore respectfully dissent to the opinion promulgated by the majority of my associates.

I am authorized to say that DAVISON, HALLEY and JACKSON, JJ., concur in these dissenting views.