Dear Senator, Mark Snyder,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does 59 O.S. 2001, § 581[59-581] authorize licensed optometrists to perform any surgeries other than laser surgeries (excluding retina surgery, laser in-situ keratomileusis (LASIK) surgery and cosmetic lid surgery)?
 2. Does Section 581 authorize the Board of Examiners in Optometry ("Board") to determine that licensed optometrists are authorized to perform surgeries other than laser surgeries (excluding retina surgery, laser in-situ keratomileusis (LASIK) surgery and cosmetic lid surgery)?
¶ 1 Your questions require an analysis of 59 O.S. 2001, §581[59-581], which reads as follows:
 A. The practice of optometry is defined to be the science and art of examining the human eye and measurement of the powers of vision by the employment of any means, including the use or furnishing of any self-testing device, the use of any computerized or automatic refracting device, the use of pharmaceutical agents, the diagnosis of conditions of the human eye, and the correcting and relief of ocular abnormalities by means including but not limited to prescribing and adaptation of lenses, contact lenses, spectacles, eyeglasses, prisms and the employment of vision therapy or orthoptics for the aid thereof, low vision rehabilitation, laser surgery procedures, excluding retina, laser in-situ keratomileusis (LASIK), and cosmetic lid surgery.
 B. The practice of optometry shall also include the prescribing of dangerous drugs and controlled dangerous substances for all schedules specified in the Uniform Controlled Dangerous Substances Act except Schedules I and II for the purpose of diagnosis and treatment of ocular abnormalities. The practice of optometry shall not include the dispensing of drugs but may include the dispensing of professional samples to patients.
 C. Optometrists shall be certified by the Board of Examiners in Optometry prior to administering drugs, prescribing drugs, or performing laser surgery procedures.
 D. Nothing in this title shall be construed as allowing any agency, board, or other entity of this state other than the Board of Examiners of [sic] Optometry to determine what constitutes the practice of optometry.[1]
Id. (emphasis added) (footnote omitted).
 I.
¶ 2 Before 1998, the Legislature had not defined the practice of optometry to include any type of surgery. In 1998, the Legislature added to Subsection 581(A) the phrases referring to laser surgery (and the exclusions therefrom), as well as Subsections C and D. See 1998 Okla. Sess. Laws ch. 8, § 1. The plain language of Subsection 581(A) currently authorizes optometrists to perform laser surgeries (except for retina surgery, LASIK surgery and cosmetic lid surgeries) to correct ocular abnormalities as long as the optometrists are certified by the Board of Examiners in Optometry ("Optometry Board") to perform the procedures, as required by Subsection 581(C).
¶ 3 You ask, however, whether Section 581 of Title 59 also authorizes optometrists to perform surgeries with means or instruments other than lasers, i.e., scalpels, needles, ionizing radiation, therapeutic ultrasound, or other mechanical means. Your question stems from the use of the words "means including but not limited to" in Subsection A, as follows:
 The practice of optometry is defined to be . . . the correcting and relief of ocular abnormalities by means including but not limited to . . . laser surgery procedures, excluding retina, laser in-situ keratomileusis (LASIK), and cosmetic lid surgery.
Id. (emphasis added). The issue is whether the phrase "means including but not limited to" gives optometrists carte blanche to perform any and all non-laser surgeries to correct and relieve ocular abnormalities. The answer is no.
¶ 4 In discussing whether optometrists may perform non-laser surgeries, we note the Optometry Board has informed us that "surgical procedures" is a term of art within the medical professions. The American Medical Association has developed standard codes for medical procedures, called Current ProceduralTerminology ("CPT"). American Med. Ass'n, Current Procedural Terminology (AMA Press, std. ed., CPT 2003). Health care providers nationwide, including optometrists, use these codes in billing for their services. Procedures labeled "surgical procedures" under CPT include procedures which a layperson would probably not think of as surgeries. For example, procedures to remove superficial foreign bodies, such as an eyelash or other particle, from the eye and associated ocular structures are considered surgical procedures under CPT.
¶ 5 Optometrists may be required to use the CPT codes for their billings, but as the Legislature has not adopted these codes they are not controlling in Oklahoma to define the term "surgical procedures." Deciding whether any particular procedure an optometrist performs constitutes a surgical procedure is a question of fact which this office is not authorized to answer.74 O.S. 2001, § 18b(A)(5).
¶ 6 Determining the scope of "means including but not limited to" involves statutory construction. The primary purpose of statutory construction is to ascertain legislative intent.Jackson v. Indep. Sch. Dist. No. 16, 648 P.2d 26, 29 (Okla. 1982). If "means including but not limited to" were used in its unrestricted sense, it would mean that optometrists could performany non-laser surgeries to correct ocular abnormalities. This cannot be a correct interpretation, because it would make the language specifically authorizing laser surgeries superfluous. "A statute must be read to render every part operative and to avoid rendering parts thereof superfluous or useless." Moran v. Cityof Del City, 77 P.3d 588, 591 (Okla. 2003). Indeed, if "means including but not limited to" were intended to be unrestricted, the Legislature would not have needed to add authority to perform laser surgeries, because arguably any surgery would have been allowed under the pre-1998 version of Section 581(A).
¶ 7 Instead, in the 1998 amendment, following the phrase "means including but not limited to," the Legislature listed particular classes of means of correcting ocular abnormalities (i.e., contact lenses, eyeglasses, prisms and vision therapy), and merely added laser surgery to the end of the list. 59 O.S. 2001,§ 581[59-581](A). While Section 581 itself states that it is not limited only to these specific means, "[i]t is widely accepted that general expressions such as `including, but not limited to' that precede a specific list of included items should not be construed in their widest context, but apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples." McClellan v. Health Maint. Org.,686 A.2d 801, 805 (Pa. 1996); see also, Roberts v. Gen. MotorsCorp., 643 A.2d 956, 960 (N.H. 1994); Mahoney v. Baldwin,543 N.E.2d 435, 436 (Mass.App.Ct. 1989). We conclude that non-laser surgeries are not in the same class as the examples the Legislature used in Section 581(A) following the words "means including but not limited to."
¶ 8 Reviewing the events which led to the 1998 amendment strengthens this conclusion.
 Courts, in construing a statute, may with propriety recur to the history of the times when it was passed; and this is frequently necessary, in order to ascertain the reason as well as the meaning of particular provisions in it.
 The history of the times during which a law was enacted tends strongly to disclose the reasons for the act, and therefore the evils sought to be remedied.
Atlantic Refining Co. v. Okla. Tax Comm'n, 360 P.2d 826,831 (Okla. 1959) (quoting Chicago, R.I. P. Ry. Co. v. Gist,190 P. 878, 884 (Okla. 1920)). In 1988, the Optometry Board decreed that qualified optometrists could use lasers in the practice of optometry. Okla. Bd. of Med. Licensure Supervisionv. Bd. of Exam'rs in Optometry, 893 P.2d 498, 499 (Okla. 1995). In 1992, the Board of Medical Licensure and Supervision ("Medical Board") issued an opinion stating that laser surgery constituted the practice of medicine. Id. In 1994, the Medical Board brought a declaratory judgment action against the Optometry Board, saying that an optometrist who performed laser surgery was practicing medicine without a license. Id. The Oklahoma Supreme Court ruled that the Medical Board had standing to bring its suit, and remanded the case back to the district court. Id. at 500.
¶ 9 In July 1997, the Oklahoma County District Court held that Section 581 did not authorize optometrists to perform either surgery or laser surgery:
 The Court finds that the practice statute governing optometry does not provide that optometrists are authorized to perform either surgery or laser procedures on the eye. 59 O.S. § 581[59-581]. The language of § 581 is not "open ended" and does not include surgery. Section 581 does not authorize the correction of ocular abnormalities by "any means" as argued by [the Optometry Board]. . . . The Court holds this language is not so expansive as to include laser procedures or surgery. Laser surgery does not fall within the same category as the other means of correcting ocular abnormalities set out in § 581.
Okla. Bd. of Med. Licensure Supervision v. Bd. of Exam'rs inOptometry, No. CJ-94-2242-66 at pp. 6-7 (Jul. 10, 1997).[2] The Optometry Board appealed the district court's decision, but dismissed its case in February 1998, during the legislative session in which Section 581 was amended to add the language authorizing optometrists to perform laser surgery.
¶ 10 We may assume the Legislature was aware of the events surrounding Section 581's amendment, and the district court's pronouncement that optometrists could perform neither surgery nor laser surgery. In response, the Legislature expressly authorized optometrists to perform only laser surgery and no other surgery. "[L]egislative silence, when it has authority to speak, may be considered as giving rise to an implication of legislative intent." City of Duncan v. Bingham, 394 P.2d 456, 460 (Okla. 1964). The Legislature's failure to authorize any type of surgery except laser surgery indicates its intent that optometrists cannot perform non-laser surgeries.
¶ 11 Even in the language authorizing laser surgery, we see legislative intent to further limit the scope of optometric practice; optometrists are permitted to perform some, but not all, laser surgeries. 59 O.S. 2001, § 581[59-581](A). We interpret the amended language to authorize laser surgeries (excluding retina surgery, LASIK surgery and cosmetic lid surgeries) and no non-laser surgeries.
¶ 12 Further, to ascertain the Legislature's intention in enacting a statute, we "may also consider the `natural or absurd consequences of any particular interpretation.'" Howrey v.State, 46 P.3d 1282, 1284 (Okla.Crim. 2002) (citation omitted). For example, one consequence of interpreting "means including but not limited to" as a limitless grant of authority for optometrists to perform any kind of surgery would mean that an optometrist cannot perform LASIK surgery, but can perform corneal transplants. This is an absurd result. "The Legislature will not be presumed to have intended an absurd result, and a statute should be given a sensible construction, bearing in mind the evils intended to be avoided. . . ." AMF Tubescope Co. v.Hatchel, 547 P.2d 374, 379 (Okla. 1976).
¶ 13 Moreover, Subsection 581(C) requires that optometrists obtain certification from the Optometry Board before they can lawfully perform laser surgeries. If the Legislature had intended that optometrists perform non-laser surgeries, it surely would have required that the optometrists be certified to perform them. The absence of such a requirement implies that the Legislature did not contemplate that optometrists would perform non-laser surgeries. Id.
¶ 14 Finally, the title to the 1998 amendment of Section 581 itself expressly restricts the means by which optometrists may correct ocular abnormalities. See 1998 Okla. Sess. Laws ch. 8, § 1. "The title to an act is an additional guide to ascertaining legislative intent." Indep. Sch. Dist. No. 89 v. Okla. CityFed'n of Teachers, 612 P.2d 719, 722 (Okla. 1980). The title states that its purpose is "permitting certain therapy, rehabilitation, and surgical procedures[.]" 1998 Okla. Sess. Laws ch. 8 (emphasis added). "Certain" qualifies "surgical procedures" and limits such procedures to those belonging to the class expressly delineated (laser surgeries) in the text of the amendment.
¶ 15 Therefore, the answer to your first question is no, 59O.S. 2001, § 581[59-581](A), does not authorize optometrists to perform non-laser surgeries.
 II.
¶ 16 You next ask whether Section 581 authorizes the Optometry Board to determine that optometrists are authorized to perform non-laser surgeries. The answer is no.
¶ 17 Subsection 581(C) of Title 59 requires the Optometry Board to certify optometrists to perform laser surgeries as follows:
 C. Optometrists shall be certified by the Board of Examiners in Optometry prior to administering drugs, prescribing drugs, or performing laser surgery procedures.
Id. (emphasis added). The Optometry Board has not promulgated rules regarding certifying optometrists to perform laser surgery procedures, but following the amendment of Section 581, it did adopt laser surgery certification standards.[3] See Okla. State Bd. of Examiners in Optometry, Laser Certification Standards (1998) (on file with the Attorney General's office). The standards set out educational and clinical requirements for certification for two types of laser surgeries: anterior segment procedures and photorefractive procedures (PRK). Id. at 3, 4-7. Nowhere in the standards does the Optometry Board refer to non-laser surgeries of any kind; rather, the language used repeatedly refers only to laser surgery procedures. See id.
Laser Certification Standards.
¶ 18 Even if the Optometry Board wished to, it could not authorize optometrists to perform non-laser surgeries, by rule or otherwise. Any attempt to do so, absent statutory authority (which we have seen in Section I above does not currently exist), would be invalid. "An administrative agency may not under the guise of its rule making power exceed the scope of its authority and act contrary to the statute which is the source of its authority. Its authority to make rules for its various procedures does not include authority to make rules which extend [its] powers beyond those granted by statutes." Northwest Datsun v.Okla. Motor Vehicle Comm'n, 736 P.2d 516, 520 (Okla. 1987). It follows that if the Optometry Board cannot promulgate rules authorizing optometrists to perform non-laser surgeries, it cannot do so by adopting informal standards to that effect either.
¶ 19 Thus, the answer to your second question is no, 59 O.S.2001, § 581[59-581], does not permit the Optometry Board to determine that optometrists are authorized to perform non-laser surgeries.
¶ 20 This Opinion replaces the earlier version of Opinion 04-9 dated March 15, 2004, which is hereby withdrawn.
¶ 21 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Title 59 O.S. 2001, § 581[59-581] does not authorize licensed optometrists to perform any surgeries other than laser surgeries (excluding retina surgery, laser in-situ keratomileusis (LASIK) surgery and cosmetic lid surgery).
 2. Title 59 O.S. 2001, § 581[59-581] does not authorize the Board of Examiners in Optometry to determine that licensed optometrists are authorized to perform surgeries other than laser surgeries (excluding retina surgery, laser in-situ keratomileusis (LASIK) surgery and cosmetic lid surgery).
 3. Whether any particular procedure constitutes surgery is a question of fact which cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, § 18b(A)(5).
 4. This Opinion replaces the previous version of Opinion 04-9 dated March 15, 2004, which is hereby withdrawn.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 DEBRA SCHWARTZ Assistant Attorney General
[1] Notwithstanding Subsection D, the Attorney General has express statutory authority outside "this title" (Title 59) to render opinions on questions of law, including determining what constitutes the practice of optometry. 74 O.S. 2001, § 18b[74-18b](A)(5), (17).
[2] We recognize that district court decisions are not controlling precedent. The case is cited merely to recount the procedural history of legal action leading to Section 581's amendment in 1998.
[3] We have not been asked, nor does this Opinion address, whether the Optometry Board must promulgate its laser surgery certification standards as rules under Article I of the Administrative Procedures Act, 75 O.S. 2001 Supp. 2003, §§ 250-308.2.